**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CECILIO GALAN,
*Defendant-Appellant*.

No. 14-30145

D.C. No.
6:11-cr-60148-
AA-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, Chief District Judge, Presiding

Argued and Submitted
October 15, 2015—Portland, Oregon

Filed November 4, 2015

Before: Ferdinand F. Fernandez, A. Wallace Tashima,
and Carols T. Bea, Circuit Judges.

Opinion by Judge Fernandez

**SUMMARY[*]**

**Criminal Law**

Vacating a restitution order and remanding, the panel held that in calculating the amount of restitution to be imposed upon a defendant who was convicted of distribution or possession of child pornography, the losses, including ongoing losses, caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible.

The panel held that the district court erred when it declined to limit the restitution imposed upon the defendant in that manner.

**COUNSEL**

Bryan E. Lessley (argued), Assistant Federal Public Defender, Federal Public Defender's Office, Eugene, Oregon, for the Appellant.

Amy E. Potter (argued), Assistant United States Attorney; S. Amanda Marshall, United States Attorney; Kelly A. Zusman, Appellate Chief; United States Attorney's Office, Eugene, Oregon, for the Appellee.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

FERNANDEZ, Circuit Judge:

Cecilio Galan appeals the district court's restitution order, which was entered against him after his conviction and sentence for distribution of child pornography[1] and possession of child pornography.[2] *See* 18 U.S.C. § 2259(a). Specifically, he asserts that the district court erred when it failed to disaggregate losses caused to Cindy[3] due to the crimes perpetrated against her by the original abuser[4] and those caused to her by others who possessed or distributed images of the abuse which were made by the original abuser. We agree and vacate the restitution order and remand.

BACKGROUND

Galan was not the original abuser of Cindy. That abuser perpetrated and made images of his disgusting crimes against Cindy over an extended period. However, those activities ended about eleven years before Galan committed the crimes for which he was convicted. The government sought restitution for the losses caused to Cindy as a result of Galan's crimes. *See id.* § 2259(a), (b)(3). Those included future lost earnings, medical expenses incurred after the date of the earliest crimes for which Galan was convicted

---

[1] *See* 18 U.S.C. § 2252(a)(2).

[2] *See id.* § 2252A(a)(5)(B).

[3] The victim uses the pseudonym "Cindy" for purposes of this litigation.

[4] By "original abuser" we mean a person who inflicted (or participated in the infliction of) the actual physical abuse.

(September 7, 2011), vocational rehabilitation, and the cost of an economic report. Galan contested the government's calculations on the basis that no attempt was made to disaggregate the losses resulting from the original abuse from the losses resulting from Galan's own activities.

The district court agreed with the government,[5] and this appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231; we have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review de novo the legality of a restitution order and, if the order is within the statutory bounds, we review the amount of restitution for abuse of discretion. We review for clear error factual findings supporting an order of restitution." *United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008) (citation omitted); *see also United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

## DISCUSSION

There can be no doubt that restitution is mandatory[6] for the "full amount of [Cindy's] losses,"[7] which were incurred

---

[5] The district court declared that "until the Ninth Circuit or the Supreme Court mandates the 'disaggregation' of harm and/or losses caused by the underlying sexual abuse of child pornography victims, I will not require the government to do so when seeking restitution."

[6] 18 U.S.C. § 2259(b)(4).

[7] *Id.* § 2259(b)(1).

"as a proximate result of [Galan's] offense[s]."**[8]**  Galan does not dispute that.  Nor does Galan claim that the categories of losses used by the government and the district court were improper.  Similarly, he does not dispute that Cindy suffered some losses as a result of his crimes,**[9]** or that he must pay some restitution on account of those losses.  The government does not dispute that it has the burden of proving the amount of Cindy's losses that resulted from Galan's crimes.**[10]**  The question on which the parties join issue is whether it is proper to make the restitution calculation without excluding the ongoing losses to Cindy due to the actions of the original abuser.

While Congress could and should have made determination of the amount to which a victim is entitled a simple matter, it regrettably did not.  *See, e.g.*, *Paroline*, __ U.S. at __, 134 S. Ct. at 1732–33 (Roberts, C.J., dissenting);

---

**[8]** *Id.* § 2259(b)(3)(F).

**[9]** He hardly could.  As the Supreme Court has pointed out: "It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured."  *Paroline v. United States*, __ U.S. __, __, 134 S. Ct. 1710, 1726, 188 L. Ed. 2d 714 (2014).  Moreover, "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy.  And there can be no doubt Congress wanted victims to receive restitution for harms like this."  *Id.*

**[10]** It hardly could.  The order of restitution "shall be issued and enforced in accordance with section 3664."  18 U.S.C. § 2259(b)(2).  Thus: "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."  18 U.S.C. § 3664(e); *see also Paroline*, __ U.S. at __, 134 S. Ct. at 1719.

*United States v. Kennedy*, 643 F.3d 1251, 1266 (9th Cir. 2011). However, the Supreme Court has answered the question before us. In *Paroline*, __ U.S. at __, 134 S. Ct. at 1722, it held: "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses."

As the Court demonstrated, the phrase "proximate cause" hides (or encompasses) interpretive problems of its own. That is to say, while, in general, it is easy enough to say that a victim's losses from the ongoing possession and distribution of images are direct and foreseeable results of those activities,[11] that does not mean that all of the ongoing losses the victim suffers were in fact caused by those very activities.[12]

The Court went on to discuss and describe the myriad of problems involved in deciding what proportion of the losses caused by trafficking should be ascribed to a possessor or distributor of child pornography involving a particular victim. *See id.* at __, 134 S. Ct. at 1722–28. The number of possessors and distributors can, of course, run into the thousands. *See id.* at __, 134 S. Ct. at 1723.

However, the Court did note a difference between original abusers and those who engage in distribution. As it said at the outset of its causation analysis: "Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes." *Id.* at __, 134 S. Ct. at 1722. Like the

---

[11] *Id.* at __, 134 S. Ct. at 1722.

[12] *Id.*

case at hand, the case before the Court was not against an original abuser. Nevertheless, the Court mentioned the complications that might arise in disaggregating the losses caused by the original abuser from those caused by others who later possess or distribute images. If losses caused by the latter were not to be separated from those caused by the original abuser, there would be no complications because there would be no need to disaggregate. Thus, the Court plainly perceived a need for separation. In fact, the Court again recognized the distinction between original abusers on the one hand, and distributors and possessors on the other, when it declared that one factor a district court could consider in determining what proportion of the distribution losses would fall upon an individual distributor or possessor was whether "the defendant had any connection to the initial production of the images." *Id.* at __, 134 S. Ct. at 1728. That underscores the fact that an original abuser is responsible for harms caused by his actions, including ongoing harms; distributors and possessors of images of those actions commit separate wrongs with separate, albeit awful, harmful consequences of their own. Moreover, it is logical to separate the two. If an original abuser had stayed in his own clandestine and sick little world, a terrible trauma would have been inflicted upon the victim, and the abuser would have to atone for all of the consequences of that wrongdoing. When distribution of images is added, an original abuser (or another person) would commit and put in motion a whole different set of abuses. Those who later participate in distribution or possession, especially at a more remote time, are part of a distribution crime, but not of the physical-abuse crime. Galan's offenses were those of a later participant; he had nothing to do with the original abuse.

Thus, the principles set forth by the Court lead to the conclusion that Galan should not be required to pay for losses caused by the original abuser's actions.  As the Tenth Circuit Court of Appeals held:

> We think it inconsistent with "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct" to hold [a defendant] accountable for those harms initially caused by [the victim's] abuser.  Thus, to the extent that the district court relied on an expert report that did not disaggregate these harms, the district court's adoption of $1.3 million as the total measure of damages cannot stand.

*United States v. Dunn*, 777 F.3d 1171, 1181–82 (10th Cir. 2015) (citation omitted); *see also United States v. Rogers*, 758 F.3d 37, 39–40 (1st Cir. 2014) (per curiam).

We express no opinion about what portion of a victim's ongoing loss should be attributable to an original abuser.  No doubt that will vary from case to case depending on many factors, for example: egregiousness of the original abuse; how a victim can (or does) cope with that kind of abuse when distribution of images does not follow; and the particular victim's own reactions to the various traumas to which the victim has been subjected.  Of course, in the case at hand, the record does not focus on that apportionment question.  We leave the appropriate development of the record in that regard to the parties and the district court.  We have no illusion that the task will be easy, but it does not appear any more impossible than the other tasks imposed upon courts attempting to apportion restitution amounts in this area.  If the

ultimate apportionment is not scientifically precise, we can only say that precision is neither expected nor required. *See Paroline*, __ U.S. at __, 134 S. Ct. at 1728–29. We recognize that the ultimate decision will be a mix of "discretion and estimation,"[13] and that it may result in "complication and prolongation of the sentencing process,"[14] but the courts (and the government) cannot decline to make an effort to accomplish what Congress and the Court have required.

## CONCLUSION

We hold that in calculating the amount of restitution to be imposed upon a defendant who was convicted of distribution or possession of child pornography, the losses, including ongoing losses, caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible. The district court erred when it declined to limit the restitution imposed upon Galan in that manner.

However, we do agree that this area, in which Congress has adopted a scheme that at least approaches the limits of fair adjudication[15] despite attempts by the courts to avoid

---

[13] *Id.* at __, 134 S. Ct. at 1729.

[14] 18 U.S.C. § 3663(a)(1)(B)(ii).

[15] *See* Lon L. Fuller, *The Forms and Limits of Adjudication*, 92 HARV. L. REV. 353 (1978).

caprice,[16] cries out for a congressional solution.[17]  In the meantime, we must proceed with what we have in the manner that Congress and the Court have required.

Restitution order VACATED, and REMANDED for further proceedings consistent with this opinion.

---

[16] *See Paroline*, __ U.S. at __, 134 S. Ct. at 1729 ("courts can only do their best"); *cf. id.* at 1730 (Roberts, C.J., dissenting) ("it is not possible to do anything more than pick an arbitrary number").

[17] *See id.* at __, 134 S. Ct. at 1735 (Roberts, C.J., dissenting); *id.* at __, 134 S. Ct. at 1744 (Sotomayor, J., dissenting); *Kennedy*, 643 F.3d at 1266.