**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

STEVEN GROVO,
*Defendant-Appellant.*

No. 15-30016

D.C. No.
9:13-cr-00030-DWM-13

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSHUA PETERSEN,
*Defendant-Appellant.*

No. 15-30027

D.C. No.
9:13-cr-00030-DWM-12

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted March 9, 2016
Portland, Oregon

Filed June 23, 2016

Before:  Raymond C. Fisher and Paul J. Watford, Circuit
Judges, and Donald E. Walter, District Judge.[*]

Opinion by Judge Fisher

## SUMMARY[**]

## Criminal Law

The panel affirmed two defendants' convictions for engaging in a child exploitation enterprise under 18 U.S.C. § 2252A(g) and conspiracy to advertise child pornography under 18 U.S.C. § 2251(d) for their roles in an online bulletin board dedicated to discussing and exchanging child pornography, vacated the restitution order, and remanded.

The panel rejected the defendants' argument that they did not act "in concert with three or more other persons" for purposes of § 2252A(g), and held that the evidence supports their convictions for participating in a child exploitation enterprise.

On a question of first impression in this circuit, the panel held that an "advertisement" under § 2251(d) need not necessarily be published in the press or broadcast over the air, and assuming without deciding that an "advertisement"

---

[*] The Honorable Donald E. Walter, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

requires *some* public component, advertising to a particular subset of the public is sufficient to sustain a conviction. The panel held that the defendants' posts, which were shared with a closed community of 40 to 45 individuals on the bulletin board's message boards, constitute advertisements under § 2251(d), and that the evidence is sufficient to sustain the convictions.

Emphasizing that the district court's method of apportioning loss between the defendants was sound under *Paroline v. United States*, 134 S. Ct. 1710 (2014), the panel vacated the restitution order and remanded to allow the district court to disaggregate the portion of the victim's losses caused by the original abuse from those attributable to continued viewing of her image, consistent with the rule announced in *United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015).

## COUNSEL

Stephen R. Hormel (argued), Hormel Law Office, LLC, Spokane, Washington, for Defendant-Appellant Steven Grovo.

Elizabeth A. Brandenburg (argued) and Marcia G. Shein, Law Firm of Shein & Brandenburg, Decatur, Georgia, for Defendant-Appellant Joshua Petersen.

Cyndee L. Peterson (argued), Assistant United States Attorney; Michael W. Cotter, United States Attorney; United States Attorney's Office, Missoula, Montana, for Plaintiff-Appellee.

**OPINION**

FISHER, Circuit Judge:

Steven Grovo, Joshua Petersen and 11 others from around the United States were indicted for their roles in Kingdom of Future Dreams (KOFD), an online bulletin board dedicated to discussing and exchanging child pornography. Although the other 11 defendants entered plea agreements in separate cases, Grovo and Petersen proceeded to a bench trial on two counts: a charge of engaging in a child exploitation enterprise under 18 U.S.C. § 2252A(g) and a charge of conspiracy to advertise child pornography under 18 U.S.C. § 2251(d).[1] They were convicted on both counts.

Grovo and Petersen both challenge aspects of their convictions, and Grovo challenges his sentence. Only three of their grounds for appeal merit discussion here.[2] First, Grovo and Petersen argue the government failed to prove they acted "in concert with three or more other persons" when they participated in posting or exchanging child pornography on KOFD's message boards. *See* § 2252A(g). Second, both argue the evidence introduced at trial does not prove they knowingly made, printed or published any "advertisement seeking or offering . . . to receive, exchange, buy, produce, display, distribute, or reproduce" child pornography, *see* § 2251(d)(1), because their posts on KOFD were not "advertisements" to the public at large, but were instead

---

[1] All statutory citations are to title 18 of the United States Code unless otherwise indicated.

[2] For the reasons stated in a concurrently filed memorandum disposition, we reject the defendants' other arguments.

visible only to other KOFD members. Finally, Grovo challenges the district court's restitution order, arguing the court erred in apportioning restitution.

We affirm both defendants' convictions. Because the district court did not have the benefit of our decision in *United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015), when it crafted the restitution order, however, we vacate that order and remand for the district court to disaggregate the losses caused by the original sexual abuse of the victim and the losses caused by the ongoing distribution and possession of her images. *See Galan*, 804 F.3d at 1291.

## I. BACKGROUND

Grovo's and Petersen's convictions arise from their involvement in KOFD, an invitation-only online message board for sharing child pornography and non-pornographic images of children. Individuals could join KOFD only after they were referred by an existing member and the site administrators and other volunteer staff determined they could be trusted. Once members were accepted to the message board, they were able to post in various "rooms" focusing on particular types of content. Members could share files either by posting them directly to a new or existing "thread" in a particular room, or, more commonly, by posting a preview image that would link other members to a third-party file-sharing service where they could view or download the image or video.

The rooms on KOFD were divided into two categories: the upper boards and the lower boards. All members of KOFD had access to the lower boards, where they could post non-nude images of children engaged in lascivious exhibition

of their genitals – for example, posing in sheer or revealing underwear – in rooms such as "Princesses 9yo and Under" and "Stunning Dolls 10yo to 15yo." The lower boards also contained rooms for members to discuss how to evade law enforcement and specific rooms – such as the "Wishing Well" and "Wishes" – where members could post requests for images or videos from specific child pornography studios or depicting particular child models.

To gain access to the upper boards, members typically needed to have a record of posting on the lower boards that demonstrated they were "friendly, cooperative members" of the site and signaled their interest in more explicit images. After a vetting process to determine the member could be trusted, a site administrator would grant him access by giving him the password to the upper boards, where members could post and view fully nude images and videos of children engaged in sexually explicit conduct.

KOFD's 40 to 45 members were therefore divided into different levels that determined their ability to access particular content – such as the upper boards – and their authority over the workings of KOFD as a whole. Administrators had the broadest authority over KOFD's membership and the technical aspects of its management, with the ability to admit or suspend members and manage the content on the boards. They were assisted by Moderators, who had more limited powers but could delete or modify objectionable posts by members. Legionaires, who were respected members of the board without formal administrative authority, rounded out the volunteer "staff" of KOFD. Non-staff members were divided into two levels based on their ability to access the upper-level content on the site. Castle Dwellers, the lowest level of members, were

limited to the lower section of KOFD.  After undergoing the vetting process described above, KOFD staff could grant members the status of Castle Resident, which permitted them access to the upper boards as well.

At trial, the government introduced extensive evidence of the defendants' participation in KOFD.  Grovo, under the username "Karomesis," was actively involved in KOFD as a Castle Resident and posted a total of 330 times in rooms on both the upper and lower boards.  In one instance, he started a thread in the upper board which he titled "LEGENDARY WIN . . ." and gave the description "my sin . . . my soul . . . my Adreana (Supermodels 7-17)".  In it, he posted preview images of a prepubescent girl wearing sheer lingerie that exposed her genitals.  Four KOFD members, including two staff members, thanked Grovo for his post.  Grovo also started a thread in the "Wishing Well" room of the lower boards seeking images of a specific model from Magic-image.com, a popular child pornography studio, and thanked other members who suggested he could join an online group to find the images by using a prepaid and untraceable Visa or Mastercard.  He also started a thread entitled "FULL Anonymity" in the lower boards, advising other members on how to use public or unsecured wireless internet connections to make it harder for law enforcement to identify them.  He also began another thread alerting KOFD members to a similar child exploitation message board whose owner had been arrested on charges related to child pornography.

In addition, the government introduced evidence Grovo replied to threads started by other members in both the upper and lower boards.  In an upper-board thread containing images of prepubescent children nude and engaged in sexually explicit activities, Grovo wrote "gracias amigo" to

the thread's creator and commented on the appearance of the models. In a lower-board thread called "Bottom Dwellers – For connoisseurs of young female backsides," Grovo posted an image of a prepubescent girl wearing a thong and posing on all fours with the camera focused on her buttocks and genitals, accompanied by the comment, "another finely clefted set of buttocks. I've always had a fondness for this girls ass, It deserves it's [sic] own temple IMHO." Eighteen other members commented on the thread and shared images or links.

Petersen, under the username "aqualung," was a Castle Resident and posted 440 times on both the upper and lower boards of KOFD. Like Grovo, Petersen both created new threads and replied to threads created by other members. For example, Petersen created a thread in the upper boards entitled "hot LS vid," referring to the popular child pornography producer LS Studios. The thread included a link to a video of two nude prepubescent girls engaging in sexually explicit conduct. Another thread – which Petersen created and named "LS at its best :)" – linked to a downloadable file of numerous images of child pornography.[3] Petersen also commented on a thread on the upper boards entitled "Oceane Dreams – Sets 1 through 27," which referred to Oceane, a popular underage model, and linked to a third-party site where users could download a file containing numerous images. Petersen thanked the poster on behalf of all the members who downloaded the file without

---

[3] In both of these instances, the Federal Bureau of Investigation (FBI) was unable to recover the content from KOFD, but recovered content from Petersen's hard drive with identical file names to the posted content and which was consistent with the video and images described in members' posts thanking Petersen.

commenting.    Four other members also posted their appreciation in the thread.

Petersen also created threads in the lower boards designed to help other KOFD members.  In one, he posted a link to a search engine that would enable members to "just type in the model or the site" they were seeking in order to find images. He also created a thread entitled "the basics of surfin safe" that advised other members on how to disguise their online identities and noted "it takes time and effort but worth it . . . time in jail is lots worse."

At the close of the government's case, both Grovo and Petersen moved to dismiss the charges against them under Federal Rule of Criminal Procedure 29, arguing the government did not prove they each acted "in concert with three or more other persons" to knowingly receive or distribute child pornography in a child exploitation enterprise, § 2252A(g), or that their posts on KOFD constituted "advertisement[s] seeking or offering" child pornography, § 2251(d)(1).    The district court denied their motions, concluding there was "[c]learly" an agreement between three or more persons to engage in illegal conduct on KOFD and that offering child pornography to the "closed community" of KOFD members constituted an "advertisement" under the statute.

The court convicted the defendants on both charges at a bench trial.  It sentenced Grovo to 360 months in prison and Petersen to 240 months.  It also considered the factors set forth in *Paroline v. United States*, 134 S. Ct. 1710 (2014), and awarded restitution to one victim, holding all those convicted jointly and severally liable for $29,859.00.  Grovo and Petersen both timely appealed.

## II.  DISCUSSION

We review de novo the sufficiency of the evidence, including questions of statutory interpretation.  *See United States v. Garcia*, 768 F.3d 822, 827 (9th Cir. 2014).  In doing so, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).  We review the district court's calculation of the amount of a restitution award for abuse of discretion.  *See United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008).

### A.

Both Grovo and Petersen challenge the sufficiency of the evidence underlying their convictions for engaging in a child exploitation enterprise.   To prove those charges, the government needed to show that (1) Grovo and Petersen knowingly distributed, received or accessed with intent to view child pornography "as a part of a series of felony violations constituting three or more separate incidents," (2) the incidents "involv[ed] more than one victim" and (3) they each "committ[ed] those offenses in concert with three or more other persons."  § 2252A(g).  Only the third element is at issue here.

### 1.

The defendants argue they did not act "in concert with three or more other persons" for the purposes of the statute. In particular, Grovo contends none of his actions were "in concert with" other members of the board because each

member acted alone and posted at different times. Petersen argues that only KOFD's creators and staff could be guilty of engaging in a child exploitation enterprise, and that there was insufficient evidence to conclude he had acted in concert with that enterprise. Neither argument is persuasive.

We begin by construing the language of the statute. The Supreme Court has recognized that "the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise," and requires the same mens rea as a conspiracy charge. *Rutledge v. United States*, 517 U.S. 292, 300 (1996) (construing 21 U.S.C. § 848(c)'s reference to acts "undertaken . . . in concert with five or more other persons"). Two other circuits have therefore concluded the "in concert with" element of § 2252A(g) requires proof of an agreement with three or more other persons to commit the series of predicate felonies. *See United States v. Daniels*, 653 F.3d 399, 413 (6th Cir. 2011) ("[F]or someone to have acted 'in concert' with [the defendant] . . . , he or she must have had the mens rea required to 'conspire' with him to commit that offense."); *United States v. Wayerski*, 624 F.3d 1342, 1351 (11th Cir. 2010) (holding the "in concert with" element "requires the same proof of an agreement that would also violate [a] conspiracy [charge]" for the same predicate offenses).

We agree with these circuits that the Supreme Court's construction of 21 U.S.C. § 848 informs our reading of § 2252A(g). Both sections criminalize analogous behavior: Section 848 targets continuing criminal drug enterprises whereas § 2252A targets continuing enterprises dedicated to distributing, receiving or accessing child pornography. Furthermore, the two statutes use similar language: Like § 2252A(g), § 848 prohibits committing a "series of

violations" "in concert with . . . other persons."  21 U.S.C. § 848(c)(2).  We see no reason to depart from our sister circuits' sensible construction of the statute.

The elements of conspiracy are well-trod territory in our precedent; the "gist" of the offense "is the confederation or combination of minds."  *United States v. Lapier*, 796 F.3d 1090, 1095 (9th Cir. 2015) (quoting *United States v. Basurto*, 497 F.2d 781, 793 (9th Cir. 1974)).  Read in this light, § 2252A(g)'s "in concert with" prong requires the government to prove the defendant and three others had "not only the opportunity" to unite for a common purpose, "but also the actual meeting of the minds."  *Id.* (quoting *Basurto*, 497 F.2d at 793).  Here, that means proof, consistent with the general mens rea of conspiracy, that Grovo and Petersen each agreed in a common enterprise with at least three other persons to distribute, receive or access with intent to view child pornography.  *See* § 2252A(g).

It is an entirely separate proposition to suggest the statute also requires that each *individual* predicate felony have been committed "in concert with" three other persons.  We agree with the Sixth Circuit that the more natural reading of § 2252A(g) is that "the required total of three other persons may be tallied by considering the predicate counts together."  *Daniels*, 653 F.3d at 412.  The statute proscribes committing "a series of felony violations" and then says the defendant must "commit[] *those offenses*" – not "*each* offense" – "in concert with three or more other persons."  § 2252A(g) (emphasis added).  The "in concert" requirement is therefore best read as referring to the "series" of predicate felonies, rather than each offense individually.

Grovo argues the members' activities on KOFD could not have occurred "in concert" because each member posted individually and at different times, often on different days, and could review other members' posts at their own leisure. We reject this suggestion, however, because it misstates the requirement of the statute. As noted above, § 2252A(g)'s reference to committing the predicate series of violations "in concert" with others requires proof, consistent with the general mens rea of conspiracy, that the defendant agreed in a common enterprise with three other persons to distribute, receive or access with intent to view child pornography. § 2252A(g)(2). Grovo's reading of the statute would impose the anomalous and atextual requirement that participants in a child exploitation enterprise act simultaneously. That has never been required to support a showing of conspiracy. On the contrary, "[o]ne may join a conspiracy already formed and in existence, and be bound by all that has gone on before in the conspiracy, even if unknown to him." *United States v. Knight*, 416 F.2d 1181, 1184 (9th Cir. 1969); *see also United States v. Bibbero*, 749 F.2d 581, 588 (9th Cir. 1984) (upholding a conviction for conspiracy to import drugs where the defendant and his coconspirators acted at different times and in different locations).

Petersen's argument that only the creators or staff of KOFD can be liable for the entire child exploitation enterprise is equally unpersuasive. In his view, § 2252A(g) criminalizes the creation of the exploitation enterprise itself – here, the KOFD message board – but does not reach the members who merely participated in the exchange of child pornography without creating or managing the website. But this distinction appears nowhere in the statute. Section 2252A(g) merely requires that the defendant commit the series of predicate offenses "in concert with three or more

other *persons*," not three or more administrators or organizers of the scheme. § 2252A(g) (emphasis added). In this respect, the text of § 2252A(g) is broader than that of 21 U.S.C. § 848, considered in *Rutledge*, which specifically requires the offenses be undertaken "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." We will not override Congress' decision to use the word "person" by reading the statute instead to specifically require an organizer, supervisor or manager. *See also Wayerski*, 624 F.3d at 1348 (affirming convictions under § 2252A(g) without requiring the participation of administrators or staff).

**2.**

So long as Grovo and Petersen acted in an agreed-upon common enterprise with at least three other KOFD members, they are guilty of participating in a child exploitation enterprise in violation of § 2252A(g). Taking the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that this was the case. *See Nevils*, 598 F.3d at 1163–64.

Petersen urges, correctly, that a member's mere presence in the upper level of the KOFD forums cannot constitute agreement to a common enterprise. *See, e.g.*, *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980) ("[S]imple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator."). Although the government must show some actual meeting of minds between the coconspirators, it may do so "through

'circumstantial evidence that defendants acted together in pursuit of a common illegal goal.'" *Lapier*, 796 F.3d at 1095 (quoting *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009)). "A formal agreement is not necessary; rather the agreement may be inferred from the defendants' acts pursuant to the scheme, or other circumstantial evidence." *Id.* (quoting *Bibbero*, 749 F.2d at 587). Coordination between conspirators, for example, "is strong circumstantial proof of agreement," *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997), and "[o]nce the existence of a conspiracy is established, evidence of only a slight connection is necessary to support a conviction of knowing participation in that conspiracy," *United States v. Sanchez-Mata*, 925 F.2d 1166, 1167 (9th Cir. 1991).

The government introduced ample proof at trial that Grovo and Petersen both were more than merely present on the KOFD boards, and did more than simply acquiesce in the exchange of child pornography between its members. On the contrary, they were active participants in the community, and a reasonable factfinder could infer from their activities that they agreed with other members to further the board's common goal of sharing, accessing and viewing child pornography. Both defendants posted hundreds of times on KOFD, gained admission to the upper level of the KOFD board after being admitted and elevated through a vouching process by the Administrators, Moderators and Legionaires, repeatedly accessed and distributed child pornography in accordance with the rules of various forums, repeatedly thanked other members for posting child pornography, and posted tips on how to ensure anonymity and security from law enforcement.

Much of this evidence also supports the court's finding that Grovo's and Petersen's activities were in coordination with three or more persons. Many of the KOFD threads introduced at trial involved the individual defendants and three or more other members either posting content or responding appreciatively to others' posts. These interactions alone support a finding the defendants acted in concert with three or more individuals. Moreover, as noted above, the defendants had to be referred by an existing member to join KOFD and underwent the board's vetting process to become Castle Residents, which had to be authorized by at least one of KOFD's three administrators and may have involved discussions among the rest of KOFD's seven-member staff.

In sum, we have no trouble concluding a reasonable factfinder could determine Grovo and Petersen acted "in concert with" at least three other individuals. The evidence supports their convictions for participating in a child exploitation enterprise in violation of § 2252A(g), and the district court did not err in denying their Rule 29 motions.

**B.**

Grovo and Petersen next challenge the sufficiency of the evidence for their convictions of conspiracy to advertise child pornography in violation of § 2251(d). To convict, the government needed to prove (1) an agreement between two or more persons to commit the crime of advertising child pornography; and (2) that Grovo and Petersen intended to advertise child pornography. *Cf. United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015) (describing the generic elements of conspiracy). A defendant is guilty of advertising child pornography under § 2251(d) if he "knowingly makes, prints, or publishes, or causes to be made, printed, or

published, any . . . *advertisement* seeking or offering . . . to receive, exchange, buy, produce, display, distribute, or reproduce any visual depiction" of child pornography.[4] Grovo and Petersen contend their posts were not "advertisements" for child pornography, and, therefore, argue the evidence at trial was insufficient to support their convictions.

**1.**

The definition of "advertisement" under § 2251(d) presents a question of first impression in this circuit. In the defendants' view, an advertisement for child pornography must be published in the press or broadcast over the air, or must otherwise be publicly and generally known. They argue that, because their posts on KOFD were visible only to members of that message board and not to the public as a whole, they cannot be guilty of advertising child pornography.

Again, in questions of statutory interpretation, "our starting point is the plain language of the statute." *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011). *Webster's* offers the following definitions of "advertisement":

> 1. "[t]he action of advertising: a calling attention to or making known" – where "advertising" is further defined as "the

---

[4] The statute also forbids knowingly making, printing, or publishing "any notice . . . seeking or offering" child pornography. § 2251(d). Because the indictment charged Grovo and Petersen with conspiring only to advertise child pornography, we need not determine what constitutes a "notice" under the statute.

action of calling something . . . to the attention of the public esp. by means of printed or broadcast paid announcements";

2.  "a calling to public attention: publicity";

3.  "a public notice; esp: a paid notice or announcement published in some public print . . . or broadcast over radio or television."

*Advertisement*, *Webster's Third Int'l Dictionary* 31 (ed. Philip Babcock Grove 2002). The *American Heritage Dictionary* similarly defines "advertisement" as a "[a] notice, such as a poster or a paid announcement in the print, broadcast, or electronic media, designed to attract public attention or patronage." *Advertisement*, *Am. Heritage Dictionary* 25 (5th ed. 2011). *Black's Law Dictionary* has a narrower, commercial definition, describing an advertisement as "[a] commercial solicitation; an item of published or transmitted matter made with the intention of attracting clients or customers." *Advertisement*, *Black's Law Dictionary* (10th ed. 2014).

None of these definitions limits an advertisement to publication in the press or broadcast over the air. At most, they merely note that an advertisement "especially" includes communications "such as" those published in the press or broadcast. The means of publication or broadcast are not the definitive features of an "advertisement," so long as the advertisement calls attention to its subject or makes a particular thing known. We therefore hold that an

advertisement need not necessarily be published in the press or broadcast over the air.

To be sure, four of the five definitions above involve some form of "public notice" or calling "public attention" to something. Although this supports the defendants' argument that an "advertisement" may require *some* public component, it does not compel us to adopt their argument that an "advertisement" must be targeted to the *entire public as a whole*. Assuming without deciding that an "advertisement" under § 2251(d) requires *some* public component, we hold that advertising to a particular subset of the public is sufficient to sustain a conviction under the statute.**[5]**

Grovo urges us to consider dictionary definitions suggesting "public" may refer to matters which are "exposed to general view" or "open." *Public*, *Webster's Third Int'l Dictionary* 1836. His argument ignores other definitions, however, which refer to matters relating to "community interests as opposed to private affairs," or matters "accessible to or shared by all members of the community," and which clarify the public may be either "the people *as a whole*" or may refer – with equal validity – to some "organized body of people" or "a group of people distinguished by common interests or characteristics." *Id.*; *see also Public*, *Am. Heritage Dictionary* 1424 (defining "public" to include "[a] group of people sharing a common interest"). Under these

---

**[5]** Both defendants argue they benefit from the rule of lenity, but that rule applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 136 S. Ct. 1423, 1434 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)). That is not the case here.

definitions, which accord with a commonsense understanding of what it means to advertise publicly, something may be public even though it is directed only to a subset of the population as a whole. We would call an advertisement placed in an alumni magazine, neighborhood circular or high school yearbook an "advertisement," for example, notwithstanding that it is publicized to only a cohort of the community that shares a particular affiliation or interest.

The Tenth Circuit reached a similar conclusion in *United States v. Franklin*, 785 F.3d 1365 (10th Cir. 2015), where the defendant subscribed to a website that allowed him to accept a closed community of subscribers as his "tribe," and with whom he shared pornographic images of children. *Id.* at 1367. The court held the defendant's communications to his tribe satisfied the statute's definition of an advertisement, concluding that even if the word had a "public" component, that component could be construed to encompass a "subset of the public," such as "an informal group of like-minded individuals." *Id.* at 1369. It rejected the defendant's assumption that in order to be public, an advertisement must be "'indiscriminately' and 'impersonally' made available to everyone," observing "[t]he public consists of numerous groups," and "[t]hough the number of members" in a particular group may be "limited," communications to the membership would remain public even if they were not made known to the entire public at large. *Id.*

*Franklin*'s reasoning accords with the view of other courts that communications to specific, closed communities can constitute advertisement within the meaning of § 2251. *See Wayerski*, 624 F.3d at 1348 (holding defendants liable under § 2251(d) when they exchanged pornography within a limited group of 45 individuals); *United States v. Rowe*,

414 F.3d 271, 276 (2d Cir. 2005) (holding that posting to a chat room supported a conviction under § 2251(c)).

Here, the defendants' posts were shared with a closed community of 40 to 45 individuals on the KOFD message boards. Their posts constitute advertisements under § 2251(d).[6]

**2.**

Having concluded that a post on KOFD can satisfy the legal definition of an advertisement under § 2251(d), we turn to the defendants' individual motions challenging the sufficiency of the evidence underlying their convictions. We conclude the evidence is sufficient to sustain both defendants' convictions.

As an initial matter, a reasonable factfinder could determine KOFD involved a conspiracy dedicated to advertising – and, indeed, exchanging and viewing – child pornography. A former member of KOFD testified its "theme" was "models under the age of 18," which included child pornography. Notwithstanding KOFD's general rule purporting to forbid members from posting child pornography, members regularly posted and requested child pornography with the acquiescence and participation of the board administrators. Specific rooms on the board were designated for particular types of child pornography, and the

---

[6] Petersen's argument that § 2251(d) and (e) apply only when a defendant has produced the pornography in question is foreclosed by *United States v. Williams*, 659 F.3d at 1225, which held there is "no requirement that a defendant personally produce child pornography in order for criminal liability to attach" under § 2251(d).

"Wishing Well" allowed members to request images produced by specific studios or depicting specific underage models. Furthermore, members were accepted to KOFD and advanced to the upper levels based in part on their demonstrated interest in child pornography.

The evidence against Grovo was sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that he participated in KOFD with an intent to advertise child pornography. His post in the Wishing Well requesting pictures from the well-known child pornography studio Magic-image.com was an "advertisement seeking . . . to receive" child pornography from other members. § 2251(d).

The evidence against Petersen was also sufficient. He argues his activities were "ambiguous" and observes there is no evidence that he ever posted to the Wishing Well itself. The first of these contentions is wrong; the second is irrelevant. Among Petersen's other posts, he started two threads – one entitled "hot LS vid," the other "LS at its best :)" – both of which included video and image files. Although the government was unable to download the attached files from links posted to KOFD, it recovered files with identical file names from Petersen's computer that contained child pornography consistent with the descriptions in other members' appreciative responses to Petersen's posts. The evidence identified "LS" as the name of one of the most popular child pornography studios. A rational factfinder could conclude beyond a reasonable doubt that these two posts were advertisements "offering to . . . display" child pornography to other KOFD members. § 2251(d)(1). Petersen's posts are not ambiguous merely because they did not contain an explicit declaration he was "offering child pornography." On the contrary, no "particular magic words

or phrases need to be included" to make a communication an advertisement. *See Rowe*, 414 F.3d at 277 (quoting *United States v. Pabon-Cruz*, 255 F. Supp. 2d 200, 218 (S.D.N.Y. 2003)).

Because these two KOFD threads support Petersen's conviction, the absence of additional posts in the Wishing Well itself is immaterial. The government presented ample evidence at trial showing KOFD members, including the defendants, advertised child pornography in other rooms throughout the upper and lower boards.

### C.

Finally, Grovo challenges the district court's method of calculating restitution. Although we find his arguments unpersuasive, we believe the district court's methodology for determining restitutionary losses was flawed in light of our subsequent decision in *United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015). We therefore vacate the restitution order and remand for recalculation.

Under § 2259, a district court must order defendants "to pay the victim [of child pornography] . . . the full amount of the victim's losses as determined by the court." In *Paroline v. United States*, 134 S. Ct. 1710 (2014), the Supreme Court established that restitution under § 2259 is proper "only to the extent the defendant's offense proximately caused a victim's losses," *id.* at 1722, and identified several factors a district court "might consider" in tailoring an award based on proximate causation, *id.* at 1728. These factors "could include" (1) the number of past criminal defendants who contributed to the victim's general losses, (2) a reasonable prediction of future offenders likely to be convicted for

crimes contributing to the victim's general losses, (3) a reasonable estimate of the broader number of offenders involved, (4) whether the defendant reproduced or distributed images of the victim, (5) whether the defendant had any connection to the initial production of images, and (6) how many images of the victim the defendant possessed. *See id.* Applying *Paroline*, the district court here determined one victim's general losses totaled $476,500,[7] then divided that total by the number of previous restitution orders entered in other cases involving the same victim, concluded the *Paroline* factors did not warrant further modifying the award and added the victim's legal expenses to reach a total restitution amount of $29,859, for which the defendants were jointly and severally liable.

Grovo first argues the district court erred in failing to fashion restitution "in an amount that comports with [his] relative role in the causal process." *Id.* at 1727. But *Paroline* did not abrogate the longstanding rule that a defendant convicted of conspiracy is liable for restitution for "not only those [harms] resulting from the defendant's individual actions, but also others caused by the conspiracy itself." *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999). Indeed, *Paroline* expressly distinguished cases in which wrongdoers act in concert with each other, *see* 134 S. Ct. at 1725, and derived its proximate causation rule from a statutory provision requiring restitution for any "losses suffered by the victim as a proximate result of the offense." *Id.* at 1720–21 (quoting § 2259(b)(3)(F)). When the "offense" is conspiracy, *Paroline* requires restitution for any

---

[7] The district court denied restitution to another victim, a determination that is not at issue on appeal.

losses proximately caused by the conspiracy – not those caused by the individual defendant.

Grovo also argues the district court's determination of relative causation was an abuse of discretion because application of the *Paroline* factors should have reduced the value of the victim's losses. But *Paroline* adopted a flexible approach to causation, *see id.* at 1723–24, which gives district courts "wide discretion" in fashioning restitution orders, *id.* at 1729. Here, the district court properly considered each *Paroline* factor in determining the relative causal significance of the defendants' conspiratorial conduct. It first divided the total amount of general losses by the number of previous restitution orders (factor 1) and concluded "[t]here is no information on which to reasonably predict future offenders" (factors 2 and 3). It then noted the KOFD board had one image of the victim (factor 6) that had been viewed 29 times (factor 4), but the defendants had not been involved in producing the image (factor 5). Concluding "these factors do not show a need to impose a greater award of restitution than those general losses attributable to the conspiracy," the court did not further modify the award based on the *Paroline* factors.

Grovo suggests the district court should instead have applied a "tiering" analysis that groups defendants together based on the *Paroline* factors, as the district court did in *United States v. Gamble*, 2015 WL 4162924 (E.D. Tenn. July 9, 2015). But *Paroline* expressly eschewed any "rigid formula" and suggested its factors "should rather serve as rough guideposts." 134 S. Ct. at 1728; *see id.* ("[I]t is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount."). The district

court plainly attempted to determine the conspiracy's relative causal role and duly considered each *Paroline* factor.

Notwithstanding the district court's careful and thorough examination of the *Paroline* factors, however, we must vacate the restitution order and remand for recalculation of the victim's general losses under the rule articulated in *United States v. Galan*.[8] In *Galan* – which we decided after the sentencing below – we held a district court must, "to the extent possible," disaggregate losses caused by "the original abuser's actions" and losses caused by "the ongoing distribution and possession of images of that original abuse." *Galan*, 804 F.3d at 1290–91. The district court, however, concluded below that "[t]he disaggregation of costs is not necessarily a brightline . . . and the continued harm and abuse arising out of the viewing of child pornography images may be part of a continuing, concerted harm," drawing that proposition in part from the district court's decision in *Galan*, which we had not yet overruled. It then determined that the "total amount of [the victim's] general losses" was equal to the total future treatment costs the victim expected to incur in her lifetime. As in *Galan*, the district court reached this determination by relying on a psychological report that focused "primarily on the resulting harms and costs from her initial abuse" and showed only that her ongoing costs were "at least in part *related to*" – not caused by – "the continuing traffic in her image." The injuries caused by the initial abuse

---

[8] Because the government raised *Galan* in a citation of supplemental authorities submitted to the court under Federal Rule of Appellate Procedure 28(j) and the parties addressed it at oral argument, the issue is properly before us. Although the government argues we should review for plain error, we do not do so where, as here, "the new issue arises while the appeal is pending because of a change in the law." *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991).

may certainly have been aggravated by subsequent viewing, but neither the district court nor the psychological report concluded subsequent viewing caused *all* of the victim's losses.

Under *Galan*, that failure to disaggregate losses caused by the initial abuse was an abuse of discretion, and we must vacate and remand for recalculation of the victim's general losses. We emphasize, however, that the district court's method of apportioning that loss between the defendants here was sound under *Paroline*. After the court properly disaggregates the victim's general losses, it is therefore permitted to reapply that method in reaching the individual restitution amount.

### III.  CONCLUSION

For the foregoing reasons, we affirm the defendants' convictions under § 2252A(g) and § 2251(d). We vacate the district court's restitution order and remand to allow the district court to disaggregate the portion of the victim's losses caused by the original abuse from those attributable to continued viewing of her image, consistent with the rule announced in *United States v. Galan*.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**