NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 20 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10309 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00313-WHA-1 |
| v. | |
| ROBERT MANNING, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10310 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00313-WHA-2 |
| v. | |
| JAMARE COATS, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted August 19, 2024
San Francisco, California

Before: BERZON, BRESS, and VANDYKE, Circuit Judges.
Separate Statement by Judge BERZON.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Robert Manning and Jamare Coats appeal their convictions for murder in aid of racketeering, in violation of the Violent Crimes in Aid of Racketeering Activity (VICAR) statute, 18 U.S.C. § 1959(a), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). We have jurisdiction under 28 U.S.C. § 1291. In an accompanying opinion, we reject defendants' argument concerning bifurcation of the trial on different elements of a single VICAR murder charge, as well as their challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). In this memorandum disposition, we address their remaining arguments. We affirm.

1. Sufficient evidence supports defendants' VICAR murder convictions. We review the sufficiency of the evidence de novo. *United States v. Grovo*, 826 F.3d 1207, 1213 (9th Cir. 2016). "In doing so, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 1213–14.

The VICAR statute punishes murder "in violation of the laws of any State" when committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a). To prove a VICAR offense, the government must show "(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendants committed a violent crime; and (4) that they acted for the purpose of

promoting their position in the racketeering enterprise." *United States v. Bracy*, 67 F.3d 1421, 1429 (9th Cir. 1995).

a. Sufficient evidence demonstrates that Mac Block was a racketeering enterprise. The VICAR statute defines "enterprise" to include "any union or group of individuals associated in fact." 18 U.S.C. § 1959(b)(2). This definition uses nearly identical language to that in the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO). *See* 18 U.S.C. § 1961(4). In the analogous RICO context, an associated-in-fact enterprise is "a group of persons associated together for a common purpose," and requires "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir. 2007) (en banc) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

The testimony presented at trial regarding Mac Block's activities and practices could lead a rational juror to find that Mac Block was an associated-in-fact enterprise with a common purpose of representing their area and committing crimes in and around the Fillmore District. Although Mac Block lacked certain organizational features and did not require members to engage in violence, such features are not required. *See Boyle v. United States*, 556 U.S. 938, 948 (2009) (explaining that an associated-in-fact enterprise "need not have a hierarchical structure" or "fixed roles").

b. Sufficient evidence shows that Manning possessed the requisite mens rea to sustain a murder conviction. VICAR murder requires the government to show that the defendant committed murder "in violation of the laws of any State or the United States," 18 U.S.C. § 1959(a)—in this case California law. Under California law, murder requires "malice aforethought." Cal. Penal Code § 187(a). "[A]n aider and abettor's mental state must be at least that required of the direct perpetrator." *People v. Gentile*, 477 P.3d 539, 547 (Cal. 2020), *abrogated on other grounds as stated in People v. Wilson*, 530 P.3d 323, 346 (Cal. 2023) (quoting *People v. McCoy*, 24 P.3d 1210, 1214 (Cal. 2001)). Under California law, malice may be either express or implied. Cal. Penal Code § 188(a). Malice is express "when there is manifested a deliberate intention to unlawfully take away the life of" another. *Id.* § 188(a)(1). Implied malice exists "when 'the killing is proximately caused by an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'" *People v. Reyes*, 531 P.3d 357, 361 (Cal. 2023) (quoting *People v. Knoller*, 158 P.3d 731, 733 (Cal. 2007)).

At a minimum, a rational juror could find that Manning acted with implied malice when he retrieved firearms from his car and returned to the funeral reception with Harrison to confront Simmons. The same evidence supports Harrison's intent. *See Reyes*, 531 P.3d at 361. Although Manning argues his actions did not

4

proximately cause Simmons's death, a reasonable juror could find otherwise when Manning provided the pistol that Harrison used in the shooting and went back with Harrison to the reception.

c. Sufficient evidence supports the jury's finding that Manning and Coats acted with a VICAR purpose. To prove VICAR purpose—that the murder was "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity," 18 U.S.C. § 1959(a)—the "gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault. But it does have to be a substantial purpose." *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008).

Because Manning was charged on an aiding and abetting theory, the government was required to prove two states of mind—first, that Harrison acted with a VICAR purpose, and second, that Manning knew of that purpose and acted with the intent to facilitate a VICAR murder. A rational juror could find both states of mind were established beyond a reasonable doubt. Given Harrison's affiliation with Mac Block and the obligation he said he felt to support Manning, a reasonable juror could find that Harrison returned to the funeral reception with a gun to maintain his reputation with Manning and other Mac Block members. A juror could likewise find that Manning was reacting to Simmons's disrespect of Mac Block members in or around Mac Block territory. *See Banks*, 514 F.3d at 970 (noting that the "evidence

5

is sufficient to convict under the purpose element of the VICAR statute if his general purpose was to maintain or enhance his position within the gang or if the violent act was committed as an integral aspect of his membership within the gang").

Sufficient evidence also supports Coats's VICAR purpose. Coats's actions, including arming himself and returning to confront Simmons, could lead a reasonable juror to infer that Coats sought to maintain his status in Mac Block by responding to Simmons's disrespect. *See id.*

2. The district court did not err in instructing the jury on mutual combat, which is a limitation on self-defense under California law. *See People v. Ross*, 66 Cal. Rptr. 3d 438, 447 (Cal. Ct. App. 2007). Because defendants did not object to the substance of the instruction below, we review for plain error. *See United States v. Liu*, 731 F.3d 982, 987 (9th Cir. 2013). There was no error here, let alone plain error, in the substance of the jury instruction.

Mutual combat applies to a fight "begun or continued by mutual consent or agreement." *Ross*, 66 Cal. Rptr. at 447 (emphasis omitted) (quotation omitted). The district court's instruction tracked California law in this respect. Regardless, there was ample evidence of pre-existing intent based on the earlier altercation that led to the eventual fatal one. Thus, there is no basis to conclude that the additional language defendants now seek regarding pre-existing intent would have changed the result.

6

There was also a sufficient evidentiary basis for the court to give the mutual combat instruction. "[A] party is entitled to an instruction" where "the instruction is 'supported by law and has foundation in the evidence.'" *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (quoting *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)). Based on Simmons's warning to "stop playing with me, before I air it out," and defendants' decision to retrieve weapons and confront Simmons, sufficient evidence supported the district court giving the mutual combat instruction.

3. The district court did not abuse its discretion in its evidentiary rulings. "[A] district judge's ruling under Rule 403 that evidence is more probative than prejudicial is reviewed for an abuse of discretion." *United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001). "[G]iven the substantial deference owed to a district court's Rule 403 rulings, we generally will not disturb such a ruling unless it 'lies beyond the pale of reasonable justification under the circumstances.'" *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010)).

a. The district court did not abuse its discretion in allowing Johnny Brown's testimony about a prior gang shooting involving "Peanut" and Manning's past gang activities, including his carrying of a gun. Although the court was skeptical of some of Brown's testimony, it reasoned that the probative value of the more supported elements outweighed the risk of unfair prejudice, and instructed the jury not to

7

consider Brown's testimony with respect to the purpose of Simmons's shooting. The district court also excluded other portions of Brown's testimony. Given the district court's careful evaluation of Brown's testimony under Rule 403, we cannot say it abused its discretion.

b. The district court did not abuse its discretion in allowing the government to introduce evidence of past racketeering acts involving defendants and other Mac Block members. The court correctly observed that some prejudice was unavoidable because the VICAR statute itself requires proof of racketeering acts. *See* 18 U.S.C. § 1959. Moreover, given the district court's repeated cautionary instructions, and the fact that this evidence was presented after the evidence concerning the murder, we do not find that the district court abused its discretion.

4. The jury selection process did not violate the Sixth Amendment guarantee to a jury selected "from a fair cross section of the community." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1158 (9th Cir. 2014) (en banc). To establish a prima facie violation, defendants "must show (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

We agree with the district court that defendants have not established a prima facie violation. Even if defendants could establish that Black jurors were underrepresented under *Duren*'s second prong, their cursory argument that the court was aware of and allowed such underrepresentation is insufficient to show systematic exclusion under *Duren*'s third prong. *See Hernandez-Estrada*, 749 F.3d at 1166 (explaining defendant "failed to provide evidence that this underrepresentation is due to the system employed by the . . . District").

5. Because the district court did not commit any error, we reject defendants' claim of cumulative error. *See United States v. Lindsey*, 634 F.3d 541, 555 (9th Cir. 2011).

**AFFIRMED.**

*United States v. Manning*, No. 22-10309
*United States v. Coats*, No. 22-10310

BERZON, Circuit Judge, concurring in part but dissenting from the judgment:

I agree with the reasoning of and the results reached in sections 1–4 of this memorandum disposition. I have, however, dissented from the result reached on the bifurcation issue in the accompanying opinion. As explained in my dissent, because the district court did have the authority to order the trial bifurcated, I would reverse and remand for a new trial. Given the result I would reach, I cannot concur in section 5 or in the affirmance that concludes this memorandum disposition.