# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3702

_____

United States of America

*Plaintiff - Appellee*

v.

Jeffrey J. Grimes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 18, 2012
Filed: December 21, 2012

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jeffrey Grimes appeals his conviction and sentence for nineteen counts based on stalking and his use of the mails and telephone for threatening and harassing communications. Grimes contends that the district court erred in several of its rulings, including the court's denials of his motions to dismiss based on the Speedy Trial Act ("STA") and based on multiplicity. He also challenges his sentence. For

the reasons stated below, we vacate the conviction on five counts but affirm as to the fourteen remaining counts and his sentence, except for five special assessments.

## I. BACKGROUND

Grimes married Linda Kari Fall in 2007. In the summer of 2008, Fall brought Grimes to Bison, South Dakota, to meet her parents, Mark and Bernice Kari, and her brother and his wife, Dan and Marcie Kari (collectively "the Karis"). Unbeknownst to the Karis, Grimes had a long history of abusing Fall and threatening to hurt her family if she tried to leave him. During Grimes's and Fall's visit to Bison, the couple had an argument and Grimes left. After Grimes's departure, he made a series of harassing and threatening telephone calls to both Mark and Bernice Kari and to Dan and Marcie Kari. The messages included threats to the Karis and to Dan and Marcie Kari's young children. Even after the Karis obtained protection orders against Grimes, they continued to receive repeated hang-up telephone calls from him.

In January 2011, after Fall tried to end her relationship with Grimes, the calls to the Karis intensified. Marcie Kari's notes documenting the calls indicated that Grimes called the Kari residence and hung up at least eighty-three times between January 1 and 11, 2011, while phone company logs indicated that there might have been as many as 113 calls. Phone company records also indicated that Mark and Bernice Kari received 160 hang-up calls during the same period. Based on these hang-up calls, Grimes was charged with two counts of making repeated telephone calls in violation of 47 U.S.C. § 223(a)(1)(D) (the "subsection D offenses")—one count for the series of calls made to Mark and Bernice Kari (Count 4) and the second count for the calls made to Dan and Marcie Kari (Count 5). In addition to the hang-up calls underlying the subsection D offenses, Dan and Marcie Kari also received a total of twenty-six voicemail messages from Grimes, with Grimes leaving several messages each day on January 4, 10, 11, 23, 24, and 25 (representing Counts 12-17, respectively). These messages included threats to embarrass Dan and Marcie Kari

and ruin their reputation in the community. Each count charged Grimes with making repeated harassing communications in violation of 47 U.S.C. § 223(a)(1)(E) (the "subsection E offenses").[1]

After a federal arrest warrant was issued, Grimes was arrested in Virginia following a traffic violation. Grimes made his initial appearance in the Western District of Virginia on March 24, 2011. The U.S. Marshal Service then transported Grimes to South Dakota, where he was arraigned and entered a plea of not guilty to all counts on April 21, 2011. On June 15, 2011, Grimes filed a motion to dismiss his indictment pursuant to the STA, arguing that the STA's seventy-day period for the beginning of his trial began when he first appeared in the Western District of Virginia. The district court denied the motion, concluding that the relevant time period did not begin until Grimes was arraigned in South Dakota, where the indictment was pending.

At his jury trial in August 2011, Grimes moved at the close of the Government's case to dismiss the subsection D offense charged in Count 5 and the subsection E offenses charged in Counts 12-17 on the grounds of multiplicity. Grimes argued that the Count 5 subsection D offense and the subsection E offenses did not require the Government to prove different elements for each offense, a violation of the Double Jeopardy Clause. He also moved to dismiss Counts 12-17 as multiplicitous because the six days of messages involved only one course of conduct,

---

[1]In addition to the subsection D and the subsection E offenses, the Karis also received seven threatening letters, three of which demanded money. Counts 1-3 charged Grimes with mailing threatening communications in violation of 18 U.S.C. § 876(d). Counts 6-11 also charged Grimes with anonymous telephone harassment in violation of 47 U.S.C. § 223(a)(1)(C). Finally, Counts 18 and 19 charged Grimes with stalking in violation of 18 U.S.C. §§ 2261A(2); 2261(b)(5)-(6) and 2265A(a). Apart from his generally applicable STA argument, Grimes does not challenge the convictions on these counts in this appeal.

not six separate courses of conduct as charged in the indictment. The district court denied the motion, and the jury ultimately found Grimes guilty on all nineteen counts. Grimes filed a renewed post-trial motion raising the same multiplicity arguments. The district court again denied the motion.

At sentencing, the district court concluded that Grimes had two prior qualifying felony convictions, making him a career offender under the United States Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. The district court decided to impose a sentence above the advisory guidelines range of 140 to 175 months based on an upward departure or, alternatively, on an upward variance. As a result, the district court sentenced Grimes to 24 months each on Counts 1-3 to run concurrently with each other but consecutively with the concurrent 24 month sentences on each of Counts 4-17. The district court also sentenced Grimes to 120 months each on Counts 18 and 19 to run consecutively to each other and to Counts 1-17, for a total prison term of 288 months. The district court also imposed a special assessment of $100 for each count, for a total assessment of $1,900.

On appeal, Grimes argues that the district court erred in denying his motion to dismiss under the STA and in denying his motions to dismiss based on multiplicity. Grimes also alleges that the district court erred in imposing his sentence by improperly classifying him as a career offender, by failing to consider his military service and associated mental health issues, and by imposing a substantively unreasonable sentence.

## II. DISCUSSION

### A. Speedy Trial Act

Grimes argues that the district court erred in denying his motion to dismiss pursuant to the STA because the time between his appearance in the court in which

the charges against him were pending and the start of his trial exceeded the seventy days permitted by the STA. The STA provides that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from *the date the defendant has appeared before a judicial officer of the court in which such charge is pending*, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (emphasis added).

Grimes argues that the phrase "the court in which such charge is pending" means all federal courts of the United States. Under this interpretation, Grimes argues that the STA's seventy-day time period began to accrue when he made his initial appearance in the Western District of Virginia on March 24, 2011, and therefore eighty days had elapsed when he filed his motion to dismiss under the STA. However, the district court held that the clock started on April 21, 2011, when Grimes was arraigned in the District of South Dakota where the indictment was filed and pending.

We review a district court's legal conclusions on a motion to dismiss *de novo*. *United States v. Howell*, 531 F.3d 621, 622 (8th Cir. 2008). We previously addressed a similar issue involving the phrase "the court in which such charge is pending" in *United States v. Thirion*, 813 F.2d 146 (8th Cir. 1987). In *Thirion*, the defendant was arrested in Monaco and held at the request of the United States for nearly three months before being extradited to the United States. *Id.* at 153. In concluding that the STA had not been violated, we said that "Thirion's statutory right to a speedy trial did not accrue until he appeared before a judicial officer of the District of South Dakota," the district court in which Thirion's case was pending. *Id.* Although this language suggests that Grimes's interpretation is incorrect, we did not address

explicitly in *Thirion* the situation here where a defendant makes his initial appearance in a federal district court other than where the indictment is pending.

When interpreting a statute, we start with its plain language. *United States v. Talley*, 16 F.3d 972, 975 (8th Cir. 1994). Looking to the text of the STA, then, Congress's use of the definite article "the" followed by the singular noun "court" suggests that the phrase "the court" refers to a single district court, rather than all ninety-four district courts that make up the federal court system. This plain reading is consistent with Rule 20 of the Federal Rules of Criminal Procedure, which sets forth the circumstances under which "[a] prosecution may be transferred to the district where the indictment or information is pending, or from which a warrant on a complaint has been issued, to the district where the defendant is arrested, held, or present." Fed. R. Crim. P. 20. If Grimes's reading of the STA were correct, Rule 20 would be superfluous—there would be no reason to transfer prosecution from one district to another because the indictment or information already would be pending in all federal districts simultaneously. Further, this conclusion is consistent with the other circuits that have addressed this issue and concluded that the STA time period does not begin to accrue until a defendant appears in the particular district court in which the charges against him are pending. *See United States v. Palomba*, 31 F.3d 1456, 1461-62 (9th Cir. 1994); *United States v. O'Bryant*, 775 F.2d 1528, 1531 (11th Cir. 1985).

Because we conclude that "the court in which such charge is pending" was solely the District of South Dakota, the relevant period for STA purposes did not begin to accrue until Grimes first appeared there. Consequently, only sixty-six days

-6-

elapsed before his trial commenced.[2]  Therefore, we conclude that the district court did not err in rejecting his motion to dismiss under the STA.

## B. Multiplicity

Grimes next argues that the district court erred in denying his motion to dismiss some of the counts against him on the grounds of multiplicity in violation of the Double Jeopardy Clause.  Before the district court and on appeal, Grimes presented two separate multiplicity arguments.  First, he argues that the subsection D offense in Count 5 is multiplicitous with the subsection E offenses in Counts 12-17 because 47 U.S.C. § 223(a)(1)(D), governing repeated or continuous telephone calls, and 47 U.S.C. § 223(a)(1)(E), dealing with harassing communications, charge the same conduct in violation of the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299 (1932).  Second, Grimes argues that the subsection E offenses in Counts 12-17 are multiplicitous because they involved a single ongoing course of conduct, violating this court's decision in *United States v. Chipps* 410 F.3d 438 (8th Cir. 2005).  We review a district court's multiplicity determination *de novo*. *United States v. Carpenter*, 422 F.3d 738, 747 (8th Cir. 2005).

### 1. Multiplicity of Count 5 and Counts 12-17

Where "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  Under this so-called same-elements test—sometimes referred to as the *Blockburger* test—unless the two offenses each

---

[2]The STA time period undisputedly was tolled for fifty-five days between Grimes's arraignment in the District of South Dakota and the start of his trial because of pre-trial motions.  *See* 18 U.S.C. § 3161(h)(1)(D).

contain an element not found in the other, they are the same offense and double jeopardy bars additional punishment. *United States v. Robertson*, 606 F.3d 943, 950 (8th Cir. 2010) (citing *United States v. Dixon*, 509 U.S. 688, 696 (1993)).

Grimes argues that Count 5, charging him with violating subsection D, which criminalizes "mak[ing] or caus[ing] the telephone of another repeatedly or continuously to ring, with the intent to harass any person at the called number," charges the same conduct as the offenses in Counts 12-17, charging him with violating subsection E, which criminalizes "mak[ing] repeated telephone calls or repeatedly initiat[ing] communication with a telecommunications device, during which conversation or communication ensues, solely to harass any person at the called number or who receives the communication." The Government counters that the telephone calls charged in the subsection D offense are not the same calls charged in the subsection E offenses and that the statutory elements for the two offenses are different.

We conclude that the charges are not multiplicitous because each statutory provision contains an element not found in the other. Subsection E requires that "conversation or communication ensues," 47 U.S.C. § 223(a)(1)(E), an element not found in subsection D, which requires only that a defendant cause "the telephone of another to repeatedly or continuously ring, with the intent to harass," *Id.* § 223(a)(1)(D). While subsection D does not require ensuing conversation or communication, it requires that the telephone ring "repeatedly or continuously," an element not found in subsection E. *See id.*

Grimes argues that the "repeatedly or continuously" ringing requirement in subsection D is contained implicitly in subsection E because one cannot engage in repeated telephone "communication[s]" without the telephone ringing for each communication, thus causing the telephone to ring repeatedly. This, however, is not necessarily the case, nor is such repeated ringing an element of a subsection E

offense. If, for example, an individual's telephone is set to silence the ringer or to forward all calls directly to an answering machine or voicemail system, the telephone will not ring at all, yet a communication still can ensue in the form of a voicemail message, and the requirements of subsection E nonetheless would be satisfied. Therefore, because the subsection D offense charged in Count 5 and the subsection E offenses charged in Counts 12-17 each require the Government to prove an element not found in the other, we conclude that the *Blockburger* same-elements test is satisfied and that the counts are not multiplicitous.

## 2. Multiplicity of Counts 12-17

Grimes further argues that the subsection E offenses charged in Counts 12-17 are multiplicitous because the repeated messages left on the six days charged—January 4, 10, 11, 23, 24, and 25—were part of a single ongoing course of conduct. If a defendant is charged with a single crime in multiple counts, those counts are multiplicitous, and subjecting the defendant to multiple punishments violates the Double Jeopardy Clause. *Chipps*, 410 F.3d at 447. Where the same statutory violation is charged in multiple counts, "the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution." *Id.* (citing *Bell v. United States*, 349 U.S. 81, 83-84 (1955)). Thus, "we must decide whether Congress intended to punish . . . a course of conduct . . . or whether Congress sought to punish separately individual acts." *Id.* at 448. "To determine how many courses of conduct [Grimes] undertook, we apply the so-called 'impulse test.'" *Id.* at 449 (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224 (1952)). "Under the impulse test, we 'treat[] as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse.'" *Id.* (quoting *Universal C.I.T. Credit Corp.*, 344 U.S. at 224) (alteration in original). In making this determination, we may "look to the statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit

of prosecution to be." *Id.* at 448.  We resolve any doubt as to congressional intent in favor of the defendant.  *Id.*

Grimes argues that, although he left a series of voicemail messages for Dan and Marcie Kari on each of six different days, each represented by a separate count, all of these messages were part of a single course of conduct, and, therefore, charging each day's messages separately violates the Double Jeopardy Clause.  In opposition, the Government contends that in preparing the indictment it needed to select some unit of prosecution, which would represent a separate unit of repeated calls.  It chose to separate the different days into different counts because, for each day, Grimes called from multiple numbers and did not always identify himself in the voicemail message, requiring the Government to prove that he was the caller who left each series of voicemail messages.  The Government also argues that each day of messages involved different thoughts or purposes of Grimes, with some days involving direct threats to the Karis and other days involving messages that could be construed as Grimes simply attempting to locate his wife.

Although we appreciate the difficulty in ascertaining the proper unit of prosecution in light of the "repeated calls" requirement of subsection E, the definition of the term "repeated" undercuts the argument that twenty-six voicemail messages left over three weeks can be separated into six different courses of conduct or impulses.  According to its definition, the term "repeated" means "renewed or recurring again and again; constant, frequent." *Webster's Third New International Dictionary* 1924 (1961).  Although no court has defined the term as it is used in subsection E, under subsection D, the term repeated has been construed to mean "repeated in close enough proximity to one another to rightly be called a single episode, and not separated by periods of months or years."  Bruce I. McDaniel, Annotation, *Prohibition of Obscene or Harassing Telephone Calls in Interstate or Foreign Communications under U.S.C.A. § 223*, 50 A.L.R. Fed. 541 (1980) (discussing *United States v. Darsey*, 342 F. Supp. 311 (E.D. Pa. 1972)).  This definition also is consistent

-10-

with the jury instruction given in this case, which explained that "'[r]epeated' or 'repeatedly' means to recur again and again, or to do over and over again in close proximity to one another so as to be called a single episode and *not separated by periods of months or years*." Final Jury Instr. No. 12 (emphasis added). Thus, resolving any doubt as to Congress's intent in favor of the defendant, we conclude that the term "repeatedly" in subsection E is most properly read as encompassing the entire three-week period and all twenty-six messages. Therefore, the subsection E offenses charged in Counts 12-17 are multiplicitous.

Nonetheless, a question remains as to the proper remedy. Grimes argues that the double jeopardy violation requires us to remand the case to the district court for resentencing. We disagree, however, because the sentences for Counts 12-17 run concurrently. *See Chipps*, 410 F.3d at 449 (holding that when "the sentences for the [multiplicitous] counts are concurrent there is no need for resentencing"); *see also United States v. Easom*, 569 F.2d 457, 459 (8th Cir. 1978) ("[W]e do not perceive any need for resentencing due to the similarity of the . . . offenses involved."). The imposition of concurrent sentences does not allow us to avoid the double jeopardy issue entirely because the special assessments imposed for each count subject Grimes to multiple punishments. *See United States v. Christner*, 66 F.3d 922, 927 (8th Cir. 1995). Accordingly, we instruct the district court to vacate Counts 13-17, including the five associated $100 special assessments.

## C. Sentencing

Grimes contends that the district court committed procedural error in calculating his criminal history category by classifying him as a career offender. He also argues that the district court erred because there is no indication that it considered his military service and resulting mental health issues when arriving at his sentence. Finally, Grimes contends that the district court abused its discretion by imposing a substantively unreasonable 288-month sentence. When reviewing a

sentence, we "must first ensure that the district court committed no significant procedural error" such as "failing to calculate (or improperly calculating) the Guidelines range, . . . failing to consider the § 3553(a) factors, . . . or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Because Grimes did not make a timely objection on these specific claims at sentencing, we review only for plain error. *United States v. Miller*, 557 F.3d 910, 916 (8th Cir. 2009). "To establish plain error, [a defendant] must prove (1) there was error, (2) the error was plain, and (3) the error affected his substantial rights." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). "An error affects a substantial right if the error was prejudicial," but an error is prejudicial in the sentencing context "only if there is a reasonable probability that the defendant would have received a lighter sentence but for the error." *Id.*

Under U.S.S.G. § 4B1.1(a), a defendant is considered a career offender if "(1) the defendant was at least eighteen years of age at the time the felony was committed, (2) the felony is either a crime of violence or controlled substance offense, and (3) the defendant has two prior felony convictions for a crime of violence or controlled substance offense." *United States v. El-Alamin*, 574 F.3d 915, 927-28 (8th Cir. 2009) (quoting *United States v. Parks*, 561 F.3d 795, 797 (8th Cir. 2009) (per curiam)). The district court determined that Grimes was a career offender based on a 1995 kidnapping conviction in Iowa and a 2009 plea of nolo contendere to aggravated stalking in Florida. Grimes argues that his 2009 plea of nolo contendere is not a conviction under Florida law and that therefore he lacks the requisite number of qualifying felony convictions. However, § 4B1.2(c), which defines the term "prior felony convictions" for the purposes of § 4B1.1(a), explains that a conviction arises on "the date that the guilt of the defendant has been established, whether by guilty plea, trial, *or plea of nolo contendere*." § 4B1.2(c) (emphasis added). In Grimes's

Florida aggravated stalking case, Grimes pleaded nolo contendere, but as noted in an unobjected-to statement in his presentence report, "the Court adjudicated him guilty." *See United States v. Paz*, 411 F.3d 906, 909 (8th Cir. 2005) (explaining that facts in presentence report are deemed admitted unless the defendant objects to those facts). Therefore, Grimes's guilt was established by his plea of nolo contendere, and the 2009 aggravated stalking conviction is a conviction for the purpose of determining whether Grimes is a career offender under § 4B1.1. This conclusion also is consistent with other courts of appeals that similarly have concluded that a plea of nolo contendere qualifies as a "conviction" under § 4B1.1. *See United States v. Joshua*, 305 F.3d 352, 352-53 (5th Cir. 2002) (per curiam); *United States v. Jones*, 910 F.2d 760, 761 (11th Cir. 1990) (per curiam). Therefore, we conclude that the district court did not err in determining that Grimes was a career offender under § 4B1.1.

Additionally, Grimes argues that the district court procedurally erred because there is no indication that it considered his military service and resulting mental health issues when determining his sentence. A district court, however, need not quote verbatim all of the factors listed in § 3553(a). *Feemster*, 572 F.3d at 461. Instead, a district court generally can demonstrate its consideration of the factors by referring to some of the statute's relevant considerations. *United States v. Gray*, 533 F.3d 942, 944 (8th Cir. 2008). "The appropriateness of brevity of length, conciseness or detail, when to write, what to say, depends upon the circumstances. . . . The law leaves much, in this respect, to the judge's own professional judgment." *Rita v. United States*, 551 U.S. 338, 356 (2007). In this case, Grimes presented information about his military history and mental health issues to the district court at sentencing, and we presume the district court considers such matters as are presented to it. *See United States v. Timberlake*, 679 F.3d 1008, 1012 (8th Cir. 2012). Therefore, the district court committed no procedural error, much less plain error, in determining Grimes's sentence.

Where the district court did not commit procedural error, we "should then consider the substantive reasonableness of the sentenced imposed under an abuse-of-discretion standard[,]. . . tak[ing] into account the totality of the circumstances." *Feemster*, 572 F.3d at 461 (quoting *Gall*, 552 U.S. at 51). For sentences within the guidelines range, we may, but are not required to, apply a presumption of reasonableness. *Id.* However, we are not permitted to apply such a presumption where, as here, the sentence is outside the guidelines range. *Id.* "Instead, we 'may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Id.* at 461-62 (quoting *Gall*, 552 U.S. at 51).

In this case, the district court determined that the severity of the offenses and Grimes's dangerous nature were not adequately taken into account by the advisory guidelines range. In deciding to impose an upward departure under U.S.S.G. § 5K2.2, or, alternatively, an upward variance, the district court discussed Grimes's multiple threats and victims over a prolonged period of time. As the district court explained:

> [W]e have got harassment and stalking of these victims for nearly four years. We have hundreds of phone calls; ringing calls continuously, hang-up calls, threatening voice mail messages left, threatening written communications, efforts to embarrass the family in the small community [in] which they live, sending [an] embarrassing announcement to a newspaper, threatening to deface the tombstone of a deceased son of Mark and Bernice Kari in the most v[ile] terms thinkable.
>
> And that kind of behavior Mr. Grimes . . . really just within the four corners of the indictment [under] which you were convicted, it's exactly the type of conduct that results in an upward departure. . . . [T]he Guidelines are not adequate to punish you, do not reach a total appropriate sentence for you in this case.

The district court also considered that Grimes had a "long history of exactly the same kind of behaviors toward other people . . . in terms of violence and assault . . . ." The district court went on to explain that, even while incarcerated, Grimes continued to terrorize people, noting that Grimes had been involved in dozens of jail incidents and stating "[w]hen you turn on somebody[,] and you are going to do it in the confines of the jail or out in public[,] and victimize people, you are very skilled and you are very manipulative . . . and you are very, very, dangerous." Based on these considerations, the district court concluded that Grimes's sentence was necessary "for protection of society and the victims in this case, and given [Grimes's] long history of conduct."

Given the factors cited by the district court, we conclude that the 288-month sentence was not substantively unreasonable as a variance in light of the § 3553(a) factors, and we need not discuss the alternative rationale for an upward departure under § 5K2.2. *See United States v. Johnson*, 572 F.3d 449, 455 (8th Cir. 2009).

## III. CONCLUSION

For the above reasons, we direct the district court to vacate Grimes's convictions as to Counts 13-17, including the associated special assessments, and affirm the remaining convictions and sentence.[3]

_____

_____

[3]Although Grimes suggests his right to effective assistance of counsel was violated, we generally do not consider ineffective assistance claims on direct appeal. *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003). Accordingly, we conclude that any ineffective assistance of counsel claims would better be brought as a post-conviction § 2255 motion. *See id.*