# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2395

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Bordman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 12, 2018
Filed: July 17, 2018

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

SMITH, Chief Judge.

Michael Bordman appeals his sentence after pleading guilty to sexual exploitation of a child and possession of child pornography. He argues that the district court[1] plainly erred in its factual analysis of his history of victimization and

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

imposed a substantively unreasonable sentence of 600 months' imprisonment. He also argues that the district court abused its discretion in awarding $3,000 in restitution to a child-pornography victim whose videos he possessed. Finally, he argues that the court erred in imposing two special conditions of supervised release related to Bordman's use of pornography and erotica. We affirm the judgment of the district court.

## I. *Background*

Bordman pleaded guilty to sexual exploitation of a child and possession of child pornography involving a prepubescent minor or a minor who had not attained 12 years of age. The presentence investigation report (PSR) recounted Bordman's offense conduct. In July 2016, Google submitted three cybertips to the National Center for Missing and Exploited Children (NCMEC) concerning child pornography images uploaded to Boardman's account. An image uploaded on August 29, 2015, depicted Bordman's penis pressed against the mouth of N.B., his one-and-a-half-year-old daughter. This account also contained an image of Bordman displaying his penis as N.B., sitting in a stroller, looked up at it.

Bordman used a cell phone and the Kik Messenger service to send child pornography to and receive child pornography from others. On July 4, 2016, while using the Kik Messenger service to chat with another man, Bordman re-posted one of the images with his daughter he had uploaded in 2015. Bordman then posted several more pornographic images of N.B. at the man's request. Bordman also sent pornographic depictions of N.B. to two other persons and told others about his sexual abuse of N.B. In addition, Bordman sent child pornography to other Kik members and to an acquaintance. He stored child pornography in his Dropbox account, including depictions of adult males sexually penetrating toddlers and infants. Included in Bordman's Dropbox account was a "Sweet Sugar" Internet child pornography series. Two of the videos in the series depicted a victim known as "Pia."

The PSR included information describing the sexual abuse that Bordman endured as a child. Bordman reported that both of his parents were convicted and imprisoned for sexually abusing him and his sisters. His father died while in prison. Bordman was approximately three to four years old at the time of the abuse. His parents forced him to engage in sexual contact with his two sisters, who were ages nine and six at the time. Court records reflected the convictions and sentences of Bordman's parents for the sexual abuse. In one court opinion, the court recounted Bordman's father's admission to sexually abusing Bordman and Bordman's subsequent examination by a pediatric nurse confirming injuries consistent with abuse. After his parents' imprisonment, Bordman spent the remainder of his childhood in foster or group homes.

The PSR calculated a total offense level of 43 and a criminal history category of I, resulting in an advisory Guidelines range of life imprisonment. But because Bordman's statutory maximum sentence was less than the maximum of the applicable Guidelines range, his Guidelines range became 600 months' imprisonment. *See* U.S.S.G. § 5G1.1(b).

Prior to sentencing, an attorney representing three victims, including Pia, in the "Sweet Sugar" Internet child pornography series submitted a restitution request. The government then submitted a supplemental sentencing memorandum and attached three exhibits. Exhibit 1 contained the restitution request and supporting documentation. The documentation included a victim impact statement by Pia's mother, a report from psychologist Dr. Marsha Hedrick, and an attorney costs declaration. Dr. Hedrick estimated that the costs to Pia, including therapy, related expenses, and a vocational assessment and counseling, would be $91,900. Pia's attorney estimated that her costs incurred (excluding attorney's fees) were $10,187.13. Exhibit 2 contained relevant pages from a NCMEC report, including information on three child pornography videos from this series that Bordman possessed in his Dropbox account. In its supplemental sentencing memorandum, the

government added one-third of the attorney's costs (because the attorney represented three victims in the "Sweet Sugar" series) to Dr. Hedrick's estimate, resulting in a total of $95,295.71. Exhibit 3 contained information from the U.S. Department of Justice listing defendants previously ordered to pay restitution to each of the three victims. The government noted that Exhibit 3 listed 31 other defendants who had been ordered to pay restitution to Pia or to all three victims. Dividing $95,295.71 by 32 (including Bordman) resulted in a restitution amount of $2,977.99. But the government noted that this figure did not account for other factors. The government identified as a relevant factor the degrading treatment of Pia in the video and how its dissemination harmed Pia. As a recipient of that video, Bordman contributed to Pia's harm. Based on its submission, the government recommended a restitution amount of $3,000.

At sentencing, the district court adopted the undisputed recommendations in the PSR and calculated a Guidelines range of 600 months' imprisonment. The court asked Bordman whether he should pay $3,000 in restitution to Pia. Bordman's counsel replied that Bordman challenged the amount the government requested. Bordman did not object to the admission of Exhibits 1, 2, and 3.

In addition, the parties stipulated that an additional defendant had been ordered to pay restitution to Pia, which increased the number of defendants to 32 from 31 listed in Exhibit 3. The government then clarified that if one divided $95,295.71 by 33 (the 32 defendants who already had paid restitution plus Bordman), the resulting figure was $2,887.75.

Investigator Joshua Bell of the Cedar Rapids Police Department then testified about the child pornography found in Bordman's Dropbox account. He testified that Exhibit 2 contained the filenames of three files from Bordman's Dropbox account relating to the "Sweet Sugar" series. According to Bell, an investigator identified Pia as the victim depicted in two of the videos, which were identical. Pia was

approximately four years old when the child pornography of her was produced. Bell testified that, in comparison with other child pornography depictions he had observed, these identical videos were "more graphic." Redacted Sentencing Transcript at 20, *United States v. Bordman*, No. 1:16-cr-00081-LRR-1 (N.D. Iowa June 12, 2017), ECF No. 65-1. Bell did confirm, however, that Bordman was not depicted in these identical videos and that he had no information that Bordman was involved in producing the videos of Pia.

Following Bell's testimony, the government discussed several factors affecting the calculation of a restitution award in this case. In addition to the "numerical calculation," these factors include the child pornography being videos instead of images; there are two copies of the same video in different folders; the "very aggravating factor" of the nature of the video; and the resulting harm to the victim. *Id.* at 23–24.

Thereafter, Bordman's counsel renewed Bordman's objections to two special conditions of supervised release. The conditions related to Bordman's use of pornographic and erotic materials. Bordman also requested that the court vary downward to 15 to 20 years' imprisonment.

The district court overruled Bordman's objections to the special conditions of supervised release, and, relevant to this appeal, imposed the following two conditions:

2)    The defendant must not operate or use photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica.

3)    The defendant must not own or possess any pornographic materials. The defendant must not use any form of pornography

or erotica nor enter any establishment where pornography or erotica can be obtained or viewed.

Judgment at 4, *United States v. Bordman*, No. 1:16-cr-00081-LRR-1 (N.D. Iowa June 13, 2017), ECF No. 54.

The court also declined to vary downward and, after evaluating the 18 U.S.C. § 3553(a) factors, it sentenced Bordman to 600 months' imprisonment. In evaluating the § 3553(a) factors, the court addressed Bordman's argument that he was a sexual abuse victim, stating, "In terms of his own reported abuse as a child, I want to make sure that it's understood that there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record that makes that assertion." Redacted Sentencing Transcript at 33. Bordman did not object to the court's statement.

The court also ordered Bordman to pay $3,000 in restitution to Pia, the amount recommended by the government.

## II. *Discussion*

On appeal, Bordman argues that the district court plainly erred in essentially dismissing his history of victimization. He also argues his sentence of 600 months' imprisonment is substantively unreasonable. In addition, he contends that the district court abused its discretion in awarding $3,000 in restitution to Pia. Finally, Bordman argues that the court erred in imposing two conditions of supervised release related to his use of pornography and erotica.

### A. *Sentencing*

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008) (quoting *Gall v. United States*, 552

U.S. 38, 41 (2007)). Our obligation is to "first ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51. "Assuming that the district court's sentencing decision is procedurally sound," our next task is to "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

### 1. *Procedural Error*

Bordman argues that the district court procedurally erred by relying on an unproven fact. He also contends that the court used clearly erroneous facts to set his sentence at 600 months. Bordman cites the district court's statement that "[i]n terms of his own reported abuse as a child, I want to make sure that it's understood that there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record that makes that assertion." Redacted Sentencing Transcript at 33.

Bordman concedes that because he failed to object to the district court's statement, our review is for plain error. Appellant's Br. at 10 (citing *United States v. Grimes*, 702 F.3d 460, 469–70 (8th Cir. 2012)). To prevail under plain-error review, Bordman "must show (1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights." *United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011) (citation omitted). Even if Bordman satisfies these elements, we will exercise our discretion to reverse "only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Bordman first takes issue with the court's use of the phrase "reported abuse," construing it to mean "self-reported." He argues that he did not merely "self-report" the abuse; instead, the probation office confirmed through court documents that Bordman's parents were convicted of sexually abusing him and his sisters and that his father admitted to raping him.

-7-

We do not read the district court's use of the phrase "reported abuse" to mean that the court questioned whether Bordman was a sexual abuse victim. At sentencing, the court indicated that it had "received and read the presentence investigation report." Redacted Sentencing Transcript at 4–5. In particular, it noted that Bordman's "history and characteristics are set forth in the presentence investigation report." *Id.* at 31. This includes ¶¶ 50 through 52 of the PSR, which recount Bordman's history of sexual abuse. At no time during sentencing did the district court indicate that it was rejecting these paragraphs in the PSR, which include court documents, statements from Bordman's father, a nurse's examination, and Bordman's statements. Instead of Bordman's interpretation, the more natural reading of Bordman's "reported abuse" is as reference to the sexual abuse Bordman suffered as reported in the PSR.

Bordman next takes issue with the district court's statement that "there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record that makes that assertion." *Id.* at 33. Bordman presented no evidence to establish cause and effect generally nor specifically as to his criminal conduct in this case. We, therefore, reject Bordman's argument. *See United States v. Adkins*, 557 F. App'x 637, 638 (8th Cir. 2014) (per curiam) (rejecting defendant's challenge to district court's factual finding that even if defendant "was abused, there was no evidence demonstrating the cause and effect between child abuse and collecting and distributing child pornography").

In summary, Bordman has not shown that the district court plainly erred resulting in procedural error.

### 2. *Substantive Reasonableness*

Because the sentence is procedurally sound, we next consider Bordman's argument that the sentence is substantively unreasonable. In making his argument, Bordman reiterates the plain-error argument previously addressed, arguing that the district court "gave weight to an improper factor" and "paid little to no attention to

the mitigating factors" of "past sexual abuse, mental health issues, and lack of criminal history." Appellant's Br. at 16.

Bordman's sentence is within the Guidelines range of 600 months' imprisonment. *See* U.S.S.G. § 5G1.1(b). Because his sentence "is within the Guidelines range, [we] may . . . apply a presumption of reasonableness." *Gall*, 552 U.S. at 51 (citation omitted). Bordman bears the burden of rebutting the presumption and showing that his sentence should have been lower. *United States v. Goodale*, 738 F.3d 917, 926 (8th Cir. 2013) (citation omitted).

Bordman has not rebutted the presumption of reasonableness. In imposing the 600-month sentence, the district court stated that it had considered all of the § 3553(a) factors and the parties' arguments. We have "held that where the district court heard argument from counsel about specific § 3553(a) factors, we may presume that the court considered those factors." *United States v. Keating*, 579 F.3d 891, 893 (8th Cir. 2009) (citation omitted). The district court also gave reasons for rejecting Bordman's specific arguments in reaching its sentence. "Where the district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its considerations of the § 3553(a) factors, such sentence is not unreasonable." *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 50).

We hold that the district court did not abuse its discretion in sentencing Bordman to 600 months' imprisonment.

## B. *Restitution*

Bordman next challenges the district court's $3,000 award of restitution to Pia. He argues that the district court misapplied *Paroline v. United States*, 134 S. Ct. 1710 (2014), in making the award. First, he contends that the district court failed to discuss any of the *Paroline* factors and instead adopted the government's proposed

calculation based on the 1/n method, which does not require consideration of his specific conduct. Second, he maintains that even if use of the 1/n method is sometimes appropriate, the district court abused its discretion in using it in his case because the number of defendants who have paid the victim is relatively small. Third, Bordman argues that the district court abused its discretion by failing to disaggregate the harm caused by the initial abuse from the harm caused by his later possession.

Restitution in this case is not optional. "Title 18 U.S.C. § 2259(a) provides that a district court 'shall order restitution for any offense' under Chapter 110 of Title 18, which covers a number of offenses involving the sexual exploitation of children and child pornography in particular." *Paroline*, 134 S. Ct. at 1718. "Restitution is proper under section 2259 only to the extent that the defendant's offense proximately caused the victim's losses." *United States v. Beckmann*, 786 F.3d 672, 682 (8th Cir. 2015) (citing *Paroline*, 134 S. Ct. at 1720, 1722). "[E]ven mere possessors of child pornography cause proximate harm to victims of child pornography." *Id.* (citing *Paroline*, 134 S. Ct. at 1726).

But "[t]he harder question in these cases is determining the appropriate *amount* of restitution—i.e., how much of the victim's losses are attributable to the defendant's conduct." *Id.* To determine the proper amount of restitution, "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Paroline*, 134 S. Ct. at 1727–28. Instead of being a "precise mathematical inquiry," such determination "involves the use of discretion and sound judgment." *Id.* at 1728.

The Supreme Court has chosen not "to prescribe a precise algorithm for determining the proper restitution amount." *Id.* at 1728. This avoids "unduly constrain[ing]" the district courts who are "closest to the facts." *Id.* Instead, the Court

has set forth factors a court may consider in "determining the proper restitution amount." *Id.*

> [D]istrict courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses like the hypothetical car accident described above, *see supra*, at 1721), then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. *These could include the number of past criminal defendants found to have contributed to the victim's general losses*; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; *any available and reasonably reliable estimate of the broader number of offenders involved* (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role. *See* Brief for United States 49.

> These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. *They should rather serve as rough guideposts for determining an amount that fits the offense.* The resulting amount fixed by the court would be deemed the amount of the victim's general losses that were the "proximate result of the offense" for purposes of § 2259, and thus the "full amount" of such losses that should be awarded. The court could then set an appropriate payment schedule in consideration of the defendant's financial means. *See* § 3664(f)(2).

*Id.* (emphases added).

"[T]he Government . . . bears the burden of proving the amount of the victim's losses . . . ." *Id.* at 1729. The Court instructed that the government "could also inform

-11-

district courts of restitution sought and ordered in other cases." *Id.* The Supreme Court has acknowledged the court's task will "involve[] discretion and estimation." *Id.*

In prior cases applying *Paroline*, we have upheld awards of restitution ranging between $2,500 and $3,500.[2] Here, the restitution award of $3,000 falls within our previously approved range. Our cases have not previously discussed the 1/n method that Bordman challenges. In the 1/n method, "n represents the number of defendants who have paid the victim restitution plus 1 (to count the defendant being sentenced)." *United States v. Sainz*, 827 F.3d 602, 605 (7th Cir. 2016) (citation omitted).

The government argues that *Paroline* does not prohibit the use of the 1/n formula. It notes that the district court also considered other factors. We observe that

---

[2] *See, e.g.*, *United States v. Funke*, 846 F.3d 998, 1002 (8th Cir. 2017) (holding the district court did not abuse its discretion in awarding $3,500 in restitution to child pornography victim based on the large number of files involving the victim that the defendant possessed and his role in distributing files to others using internet file-sharing program); *United States v. Evans*, 802 F.3d 942, 949–50 (8th Cir. 2015) (holding the district court did not abuse its discretion in awarding $3,250 in restitution to child pornography victim, where court considered harm experienced by the victim, the range of awards granted in prior cases, the number of videos and images of the victim the defendant possessed, the number of people already convicted of possessing the victim's image, the difficulty of assessing the number of future possessors of the victim's image, and the defendant's relative culpability). *Beckmann*, 786 F.3d at 682 (holding the district court did not abuse its discretion in awarding $3,000 in restitution per child pornography victim based on the consideration of victim impact statements, the restitution ordered in prior cases, the number of potential defendants involved, and the defendant's relative culpability); *United States v. Knapp*, 695 F. App'x 985, 988 (8th Cir. 2017) (per curiam) (rejecting defendant's challenge to the district court's order of equal amounts of restitution of $2,500 to two victims with different total losses because the victim with the greater claimed losses had received 315 restitution orders, while the victim with lower claimed losses had received only three restitution orders).

a "district court's use of the 1/n method t[akes] into account the number of past criminal defendants found to have contributed to [the victim's] total loss, which is one of the *Paroline* factors." *Id.* at 606. But we need not determine in this case if a district court may *solely* rely on the 1/n formula and forego the other *Paroline* factors because the district court relied on additional factors.

Following Bell's testimony, the government discussed four factors affecting the award of restitution. It explained that "one of the factors [the court] can consider is the numerical calculation, but [the court] also . . . can consider other things." Redacted Sentencing Transcript at 23. Here, the government highlighted: (1) the child pornography being videos instead of images; (2) there are two copies of the same video in different folders; (3) the "very aggravating factor" of the nature of the video; and (4) the resulting harm to the victim. *Id.* at 23–24. The government requested $3,000 in restitution to Pia.

Bordman also raises another argument challenging the restitution award: He asserts that the district court abused its discretion by failing to disaggregate the harm caused by the initial abuse from the harm that his later possession caused. In *Paroline*, the Supreme Court commented that "[i]t is perhaps simple enough for the victim to prove the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole," i.e., "general losses," but acknowledged that "[c]omplications may arise in disaggregating losses sustained as a result of the initial physical abuse." *Paroline*, 134 S. Ct. at 1722. Nonetheless, the Court set "those questions . . . aside for present purposes."[3] *Id.*

---

[3]"Several circuit courts have expounded on this issue post-*Paroline*." *United States v. Jimenez*, 692 F. App'x 192, 203 (5th Cir. 2017) (citing *United States v. Galan*, 804 F.3d 1287, 1289–91 (9th Cir. 2015) ("[T]he principles set forth by the [Supreme] Court lead to the conclusion that [the defendant] should not be required to pay for losses caused by the original abuser's actions."); *United States v. Dunn*, 777 F.3d 1171, 1181–82 (10th Cir. 2015) ("We think it inconsistent with 'the bedrock

-13-

principle that restitution should reflect the consequences of the defendant's own conduct' to hold [the defendant] accountable for those harms initially caused by [the victim's] abuser." (quoting *Paroline*, 134 S. Ct. at 1725)); *United States v. Miner*, 617 F. App'x 102, 103 (2d Cir. 2015) (holding that the district court adequately disaggregated the victim's losses)). At least two circuits have vacated restitution awards based on a district court's failure to disaggregate. *Galan*, 804 F.3d at 1289–91; *Dunn*, 777 F.3d at 1181–82. But in *Dunn*, the Tenth Circuit "acknowledge[d] that *Paroline* did not resolve this precise question." 777 F.3d at 1181. And the Ninth Circuit's *Galan* decision is not without its critics. One district court opined that it creates a "monumental difficulty associated with such disaggregation" for district courts. *United States v. Chan*, No. CR 15-00224 DKW, 2016 WL 370712, at *1 (D. Haw. Jan. 29, 2016). That court found "difficulties with disaggregation" in its application." *Id.* at *2. It explained:

> Even if we had a reliable allocation among the original abuser(s), on the one hand, and distributors/possessors, on the other, the logical extension of *Paroline* and, more particularly, *Galan* require disaggregation *within* a given category. In other words, because *Paroline* pronounces, and *Galan* parrots, that restitution must "reflect the consequences of the defendant's own conduct," it appears non-sensical to disaggregate only between original abusers and distributors/possessors. *Paroline*, 134 S. Ct. at 1725; *Galan*, 804 F.3d at 1290–91 (quoting *United States v. Dunn*, 777 F.3d 1171, 1181–82 (10th Cir. 2015)). Disaggregation must also occur among distributors and/or among possessors in order to determine the losses caused by Defendant's conduct apart from the losses caused by all others (including fellow possessors), and the task there is no less difficult nor less imprecise. Indeed, taken together, the Court agrees with Defendant that "*Paroline* and *Galan* set out an impossible task for district courts" (Dkt. No. 42 at 42) that even *Galan*'s considered words do not sufficiently acknowledge and certainly do little to resolve.

*Id.*; *accord United States v. Kugler*, No. CR 14-73-BLG-SPW, 2016 WL 816741, at *3 (D. Mont. Feb. 29, 2016) ("Judge Watson characterizes such disaggregation 'an impossible task.' This court agrees. Under the current circumstances, there is no

-14-

We note that one of the *Paroline* factors already accounts for disaggregation. *See Paroline*, 134 S. Ct. at 1728 ("[W]hether the defendant had any connection to the initial production of the images."). The Supreme Court said that the *Paroline* factors are "rough guideposts for determining an amount that fits the offense." *Id.* Furthermore, as previously noted, the Court acknowledged in *Paroline* that "[c]omplications may arise in disaggregating losses sustained as a result of the initial physical abuse" but nonetheless set "those questions . . . aside for present purposes." *Id.* We decline to transform one of the *Paroline* factors—the disaggregation factor— from a "rough guidepost" into a "rigid formula." *See id.*

We hold that the district court did not abuse its discretion in awarding Pia $3,000 in restitution. The district court, by adopting the government's argument, considered a variety of factors, including the egregious nature of the video and the severity of the depictions. In addition, the $3,000 award is consistent with our past decisions in child pornography restitution cases.

## C. *Supervised Release Conditions*

Bordman's final challenge is to two of the special conditions of supervised release that the district court imposed, which are as follows:

> 2)  The defendant must not operate or use photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica.

---

mechanism available to the court to determine, by the preponderance of the evidence, what losses the defendant proximately caused the victims when it cannot disaggregate the loss amounts. As a result, it cannot award restitution to 'Sarah' and 'Jane Doe.'" (citation omitted)).

3) The defendant must not own or possess any pornographic materials. The defendant must not use any form of pornography or erotica nor enter any establishment where pornography or erotica can be obtained or viewed.

Judgment at 4.

Bordman raises a First Amendment challenge to these conditions, arguing that they are vague because the terms "pornographic material," "pornography," and "erotica" do not provide the required specificity. Bordman notes that the term "pornography" is not combined with the phrase "sexually explicit materials" and that this court has never defined "erotica." Additionally, Bordman argues that inclusion of the word "pornography" makes the conditions overbroad and asks this court to overrule our case law to the contrary. Alternatively, he asserts the conditions are still overbroad because they prohibit the use, possession, or entering of an establishment that sells "erotica," which could include books, songs, or pictures that are not pornographic or sexually stimulating. In particular, he contends that Special Condition 3 could be enforced to prohibit him from entering any record store, book store, public library, or grocery store.

"A sentencing judge is afforded wide discretion when imposing terms of supervised release, and we review a decision to impose special terms of supervised release for abuse of that discretion." *United States v. Hobbs*, 845 F.3d 365, 367 (8th Cir. 2016) (quoting *United States v. Crume*, 422 F.3d 728, 732 (8th Cir. 2005)). When exercising its "wide discretion," a district court must impose conditions that "reasonably relate to the nature and circumstances of the offense, the defendant's history and characteristics, deterring criminal conduct, protecting the public, and promoting the defendant's correctional needs." *Id.* at 367–68 (citing 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (2)(B)–(D); *Crume*, 422 F.3d at 733). Additionally, "the

-16-

conditions must not constrain the defendant's liberty more than reasonably necessary to deter criminal conduct, protect the public, and promote [the defendant's] correctional needs." *Id.* at 368 (citing 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(B)–(C); *Crume*, 422 F.3d at 733).

Despite the district court's "wide discretion," "we are particularly reluctant to uphold sweeping restrictions on important constitutional rights." *Hobbs*, 845 F.3d at 368 (quoting *Crume*, 422 F.3d at 733). "We have addressed the issue of special conditions infringing on First Amendment rights largely in the context of criminal sex offense cases . . . ." *United States v. West*, 829 F.3d 1013, 1020 (8th Cir. 2016). "A special condition of supervised release is only unconstitutionally overbroad if its overbreadth is real and substantial in relation to its plainly legitimate sweep." *United States v. Thompson*, 653 F.3d 688, 695 (8th Cir. 2011) (citations omitted).

"This court has held that when a defendant is convicted of an offense related to child pornography, a ban on the possession of pornography is 'appropriately tailored to serve [the] dual purposes of promoting [the defendant's] rehabilitation and protecting children from exploitation.'" *United States v. Key*, 832 F.3d 837, 840 (8th Cir. 2016) (alterations in original) (quoting *United States v. Ristine*, 335 F.3d 692, 694–95 (8th Cir. 2003)). As a result, we have "consistently rejected overbreadth arguments where the special condition at issue precluded the defendant from possessing pornography *or* sexually explicit material." *Id.* (emphasis added) (quoting *Thompson*, 653 F.3d at 695). By contrast, "we have invalidated special conditions precluding the defendant from possessing any material containing nudity, alluding to sexual activity, or depicting sexually arousing material as overly broad." *Thompson*, 653 F.3d at 695 (citing *United States v. Kelly*, 625 F.3d 516, 519 (8th Cir. 2010); *United States v. Simons*, 614 F.3d 475, 483–85 (8th Cir. 2010)).

The first sentence of Special Condition 3 forbids Bordman's possession of pornography. Bordman acknowledges our case law rejecting his overbreadth

argument, but asks us to overrule it. "Our long standing rule is that one panel may not overrule an earlier decision by another." *Jackson v. Ault*, 452 F.3d 734, 736 (8th Cir. 2006) (citation omitted).

Bordman also challenges Special Conditions 2 and 3 as vague for their use of the terms "pornography" and "erotica." In analyzing vagueness attacks on the term "pornography," "we have previously noted concerns with the uncertainty of what constitutes 'pornography' because the term lacks a precise legal definition." *Thompson*, 653 F.3d at 695 (citing *Simons*, 614 F.3d at 484 n.4; *Ristine*, 335 F.3d at 695). Nonetheless, we have observed that "we can never expect mathematical certainty from our language." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). As a result, "[t]hough we have acknowledged that *terms like 'pornography'* lack precise legal definitions, we have repeatedly upheld these *same or very similar conditions* when they were '*obviously relevant* to the child pornography offense at issue or to the defendant's history and characteristics.'" *United States v. Hobbs (Hobbs II)*, 710 F.3d 850, 855 (8th Cir. 2013) (emphases added) (rejecting defendant's argument that condition prohibiting defendant "from possessing, viewing, or using any 'sexually stimulating or sexually oriented' material 'deemed inappropriate by the U.S. Probation Officer in consultation with the treatment provider' [was] unconstitutionally overbroad and vague") (citing *United States v. Deatherage*, 682 F.3d 755, 764 (8th Cir. 2012) ("sexually oriented materials"); *Thompson*, 653 F.3d at 693 ("sexually explicit materials"); *United States v. Wiedower*, 634 F.3d 490, 492–93, 496–97 (8th Cir. 2011) ("sexually explicit material"); *Stults*, 575 F.3d at 841 ("sexually oriented or sexually stimulating materials"); *United States v. Boston*, 494 F.3d 660, 667 (8th Cir. 2007) ("sexually stimulating or sexually oriented material")).

In *United States v. Schultz*, a defendant appealed the reimposition of a condition that prohibited him "'from owning or having in his possession any pornographic materials' or from 'enter[ing] any establishment where pornography or

erotica can be obtained or viewed.'" 845 F.3d 879, 881 (8th Cir. 2017) (alteration in original). The defendant argued that "the provisions are overbroad and vague, such that he has no clear notice as to what he can view or what businesses he can enter without violating his supervised release." *Id.* at 881–82. We held that the district court did not plainly err in reimposing the condition because the district court had previously "expressed its concern about [the defendant's] prior sexual involvement with underaged females and indicated he had developed a 'pattern' of inappropriate behavior in that regard." *Id.* at 882. We relied on our prior holding that "'the need to protect children from future exploitation' justifies banning a defendant 'from possessing any pornography.'" *Id.* (quoting *United States v. Mefford*, 711 F.3d 923, 927 (8th Cir. 2013)). We found the condition appropriately tailored to the defendant's circumstances based on his original sex offense and the district court's finding of the defendant's "'pattern' of inappropriate behavior towards minors." *Id.*

*Mefford* addressed two special conditions. 711 F.3d at 926. The first condition prohibited the defendant from accessing, viewing, possessing, or having any pornography, "including any material that depicts or alludes to sexual activity, or sexually explicit conduct as defined by 18 U.S.C. § 2256(2). This includes, but is not limited to, any such material obtained through access to any computer or any other electronic device, and any that are self-produced." *Id.* The second condition prohibited the defendant from "enter[ing] any location where pornography, erotica, or adult entertainment can be obtained or viewed." *Id.* On appeal, the defendant challenged the conditions as unconstitutionally overbroad and vague. *Id.* at 927.

"We conclude[d] that special conditions one and two [were] not unconstitutionally overbroad." *Id.* As to the first condition, it banned the defendant "from possessing 'any pornography.'" *Id.* We noted that such language was "similar to that in many conditions we have previously upheld." *Id.* (citing *Wiedower*, 634 F.3d at 492, 496–97 (any "form of media containing pornographic images"); *Boston*, 494 F.3d at 667–68 ("any form of pornography"); *Ristine*, 335 F.3d at 694–95 ("any

pornographic materials")). We held that the court's ban on the defendant's possession of "any pornography" was "appropriately tailored" based on the defendant's "past sex crimes, his rehabilitation, and the need to protect children from future exploitation." *Id.* (citing *Ristine*, 335 F.3d at 694–95).[4]

The second condition prohibited the defendant from "enter[ing] any location where pornography, erotica, or adult entertainment can be obtained or viewed." *Id.* at 928 (alteration in original). This condition was "virtually identical to wording we have previously upheld." *Id.* (citing *Ristine*, 335 F.3d 694–95 (upholding condition prohibiting the defendant from entering "any establishment where pornography or erotica can be obtained or viewed")). As a result, we upheld the condition as constitutional as to the defendant. *Id.*

We are bound by *Mefford* and hold that the terms "pornography" and "erotica" are not vague as applied in Bordman's case. First, although both terms "lack precise legal definitions," we have upheld very similar conditions in cases where the conditions were "obviously relevant" to the child pornography offense. *See Hobbs II*, 710 F.3d at 855. This is such a case. Here, Bordman pleaded guilty to sexual exploitation of a child—his own daughter—and possession of child pornography. Second, in *Mefford*, we upheld a condition virtually identical to Special Condition 3, which used the terms "pornography" and "erotica, based on our prior precedent. *See* 711 F.3d at 928.

Finally, Bordman challenges as overly broad Special Condition 2 because it not only bans the owning or possessing of certain devices, but it also prohibits the

---

[4]"Our conclusion that this special condition [was] not overbroad [was] also supported by the fact that the term 'sexually explicit conduct' [was] modified by its definition in 18 U.S.C. § 2256(2), which describes only graphic sex acts." *Id.* at 928.

operation or use of such devices. In addition, he argues that the condition is not limited to a camera but also a computer or "any electronic storage device."

"Two relevant factors for determining the propriety of a restriction on computer . . . use include whether the defendant did more than merely possess child pornography and whether the restriction is a total ban." *United States v. Notman*, 831 F.3d 1084, 1089 (8th Cir. 2016) (citing *Ristine*, 335 F.3d at 696). Here, Bordman does not dispute that he did more than merely possess child pornography; he also pleaded guilty to sexual exploitation of a child. And, we conclude this condition *does not* amount to a total ban because Bordman is not barred from operating or using the enumerated items for a lawful purpose. *Cf. Ristine*, 335 F.3d at 696 ("The defendant was not completely prohibited from using a computer; he could possess a computer with the permission of the probation officer." (citation omitted)). The remainder of the special conditions of supervised release conditions make this clear. For example, Special Condition 4 provides that Bordman's computer and electronic storage device "will be subject to random or periodic unannounced monitoring by a United States Probation Officer." Judgment at 4. Special Condition 5 provides that Bordman "must allow the probation officer to install computer monitoring software on any computer . . . [he] use[s]." *Id.* Finally, Special Condition 6 states that Bordman must permit his probation officer to search his "computer" or "electronic storage device" "at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." *Id.*

Accordingly, we affirm the district court's imposition of Special Conditions 2 and 3.

### III. *Conclusion*
We affirm the judgment of the district court.

_____